1 | DAVID R. ZARO (BAR NO. 124334)
ALLEN MATKINS LECK GAMBLE
2 |   MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
3 | Los Angeles, California 90071-3309
Phone: (213) 622-5555
4 | Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com

5

6 | JEREN WEI (BAR NO. 242298)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
7 | 1900 Main Street, Fifth Floor
Irvine, California 92614-7321
8 | Phone: (949) 553-1313
Fax: (949) 553-8354
9 | E-Mail: jwei@allenmatkins.com

10 | Attorneys for Defendants
ONEWEST BANK, FSB, DEUTSCHE BANK
11 | NATIONAL TRUST COMPANY and
MORTGAGE ELECTRONIC REGISTRATION
12 | SYSTEMS, INC.

13 |                     UNITED STATES DISTRICT COURT

14 |                     CENTRAL DISTRICT OF CALIFORNIA

15 |                          SOUTHERN DIVISION

16 | MARK SHAFER, an individual,          | Case No. SACV11-00021 AG(MLGx)

17 |              Plaintiff,

18 |       vs.                            | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b)**

19 | INDYMAC BANK, FSB; ONEWEST          | **[FEDERAL QUESTION]**
BANK, FSB; DEUTSCHE BANK,
20 | AZTEC FORECLOSURE
CORPORATION; MORTGAGE
21 | ELECTRONIC REGISTRATION
SYSTEMS, INC. and DOES 1-150,
22 |
             Defendants.
23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

917981.01/OC

NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1331 and 1441(b)

(Stamp: 2011 JAN -5 PM 12: 26   FILED   CLERK U.S. DISTRICT COURT   CENTRAL DIST. OF CALIF.   SANTA ANA   BY)

1 | TO THE CLERK OF THE UNITED STATES DISTRICT COURT THE

2 | CENTRAL DISTRICT OF CALIFORNIA:

3 |     PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331 and 1441

4 | Defendants OneWest Bank, FSB ("OneWest"), Deutsche Bank National Trust

5 | Company, and Mortgage Electronic Registration Systems, Inc. (collectively

6 | "Defendants") hereby remove to this Court the above-referenced action.

7 |     1.    On December 1, 2010, this action was commenced in the Superior

8 | Court of the State of California in and for the County of Orange, entitled *Mark*

9 | *Shafer, an individual v. Indymac Bank, FSB, OneWest, FSB, Deutsche Bank, Aztec*

10 | *Foreclosure Corporation, Mortgage Electronic Registration Systems, Inc. and Does*

11 | *1-50*, Case No. 30-2010 00429212 (the "State Court Action").

12 |     2.    The first date upon which Defendants received a copy of the Complaint

13 | was on December 6, 2010, when OneWest received a copy of the Summons and

14 | Complaint.. A copy of the Summons and Complaint received by OneWest is

15 | attached hereto as **Exhibit A**.

16 |     3.    This Notice of Removal is timely under 28 U.S.C. § 1446(b), as the

17 | instant Notice of Removal is filed within thirty (30) days of OneWest's initial receipt

18 | of the Complaint.

19 |     4.    Pursuant to 28 U.S.C. § 1446(a), Defendants file this Notice of

20 | Removal in the District Court of the United States for the district and division within

21 | which the State Court Action is pending.

22 |     5.    This Court has original jurisdiction of this civil action under 28 U.S.C.

23 | § 1331, and the action is properly removable to this Court under 28 U.S.C.

24 | § 1441(b), because Plaintiff has asserted claims arising out of or predicated upon the

25 | Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq. See* Complaint, ¶¶ 49-53.

26 |     6.    Pursuant to 28 U.S.C. § 1446(a), Defendants have attached as **Exhibit**

27 | **B** copies of all process, pleadings and orders received by Defendants in the State

28 | Court Action.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

917981.01/OC

NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1331 and 1441(b)

1    7.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal with

2  its attachments will be promptly served on Plaintiff and all counsel of record, and

3  notice thereof will be filed with the clerk of the Los Angeles Superior Court.

4    8.    All other defendants who have been served in this action consent to and

5  have joined in this Notice of Removal. See **Exhibit C**.

6

7  Dated: January 5, 2011

8

9

10

11

12

13

ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
DAVID R. ZARO
JEREN WEI

By:
_____
    JEREN WEI
    Attorneys for Defendants ONEWEST
    BANK, FSB, DEUTSCHE BANK
    NATIONAL TRUST COMPANY and
    MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

917981.01/OC

NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1331 and 1441(b)

# EXHIBIT "A"

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Indymac Bank FSB,One West Bank FSB,Deutsche Bank,Aztec Foreclosure Corp.,Mortgage Electronic Registrations Systems,Does 1-150

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Mark Shafer an Individual

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 01 2010

ALAN CARLSON, Clerk of the Court

BY: J. TRAN, DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California
Central Justice Center 700 Civic Center Drive West Santa Ana, CA 92701

CASE NUMBER:
*(Número del Caso)*
30-2010
00429212

JUDGE SHEILA FELL
DEPT. C22

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Ken Roberts and Associates SBN 62536 575 Anton Blvd #300 Costa Mesa, CA 92626

DATE: DEC 01 2010 ALAN CARLSON Clerk, by JOSEPH TRAN , Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

*Exhibit A*

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address): <br> The Law Offices of Ken Roberts and Associates <br> Ken Roberts SBN 62536 <br> 575 Anton Blvd. #300 <br> Costa Mesa, CA 92626 <br> TELEPHONE NO.: 714-432-6480 FAX NO.: 714-593-3795 <br> ATTORNEY FOR (Name): Plaintiff | **FOR COURT USE ONLY** <br> **FILED** <br> SUPERIOR COURT OF CALIFORNIA <br> COUNTY OF ORANGE <br> CENTRAL JUSTICE CENTER <br> DEC 01 2010 <br> ALAN CARLSON, Clerk of the Court <br> BY: J. THAN DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, CA 92704
BRANCH NAME: Central Justice Center

CASE NAME:
Mark Shafer v. Indymac bank FSB, One West Bank, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2010 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 00429212 <br> JUDGE: JUDGE SHEILA FELL <br> DEPT: DEPT. C22 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action (specify): 4
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 12-1-2010
Mark H. Shafer
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this case is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

LAW OFFICES OF KEN ROBERTS AND ASSOCIATES
KEN ROBERTS, Esq. (SBN 62536)
575 Anton Blvd #300
Costa Mesa, CA 92626
Tel: (714) 432-6480
Fax: (714)593-3795

Attorney for Plaintiff

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 01 2010

ALAN CARLSON, Clerk of the Court

BY _____ J. TRAN _____ DEPUTY

Superior Court of California County of Orange
*Central Justice Center*

Case No.:

**30-2010**

**0 0 4 2 9 2 1 2**

Mark Shafer an individual

Plaintiffs,

vs.

Indymac Bank FSB, One West Bank FSB, Deutsche Bank, Aztec Foreclosure Corporation, Mortgage Electronic Registration System Inc. ~~........~~ and Does 1-150

Defendants

**COMPLAINT TO DETERMINE THE NATURE, EXTENT, AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM; TILA VIOLATION, FRAUD, LIBEL, QUIET TITLE, AND INJUNCTIVE RELIEF.**

**JUDGE SHEILA FELL**
**DEPT. C22**

COMES NOW plaintiff Mark H. Shafer herein, ("Plaintiff"), respectfully alleges the following:

1. Plaintiff is an individual who at all times has resided in the State of California.

2. Plaintiff is bringing this action under the applicable laws of the State of California and the United States of America.

3. Plaintiffs is and at all times mentioned herein is the owner and purchaser of real property located at 20361 Newland Street Huntington Beach, CA 92646 (hereinafter referred to as "SUBJECT PROPERTY" and more particularly described as:

LOT 98 OF TRACT 3595, IN THE CITY OF HUNTINGTON BEACH,

COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP

RECORDEED IN BOOK 137, PAGES 19 THROUGH 20, INCLUSIVE OF

MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY

RECORDER OF SAID COUNTY. PARCEL NUMBER: APN 151-304-36.

4.  Plaintiff is informed and believes that defendant ONE WEST BANK FSB is an unknown entity doing business in California, Indymac Bank FSB is an unknown entity, Aztec Foreclosure Corporation is an entity that is incorporated in California, Mortgage Electronic Registration System Inc. is a Delaware corporation illegally doing business in California.

5.  Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, and therefore sue this Defendant by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

6.  The Defendants herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title hereto" (hereinafter referred to as "the unknown defendants") are unknown to Plaintiffs. These unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title; and their claims, and each of them, constitute a cloud on Plaintiff's title to that

property.

7. The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 1 through 100 inclusive, were the agents and/or employee of the named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

8. The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 51 through 100 inclusive, were the agents and/or employee named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

9. The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 101 through 150 inclusive, were the agents and/or employee of named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

10. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 150, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

11. On or about March 11, 2010 AZTEC FORECLOSURE CORPORATION filed a Notice of Default, asserting a claim against Plaintiffs in the sum of $17,621.42, and further asserting that said claim is secured by a lien against real property belonging to Plaintiffs located at 20361 Newland Street Huntington Beach, CA 92646 Attached as Exhibit 1 which is Plaintiffs' residence (hereinafter "the Property"). Attached as exhibit 2 to the Motion for Relief from Automatic Stay was a copy of a deed of trust in the amount of $540,000 in favor of Lender, Indymac Bank FSB, a federally chartered savings bank which deed of trust was recorded in or about May 2, 2005 in the Orange County Recorder's Office as Document Number 2005000335677.

12. Although there was purported assignment of the Indymac Bank FSB, a federally chartered savings bank Deed of Trust recorded in the Orange County Recorder's Office, Plaintiff is informed and believes that such assignment was not done by Indymac Bank FSB, a federally chartered savings bank but fraudulently conveyed. To Mortgage Electronic Registration Systems, Inc. attached as Exhibit 3 to Mortgage Electronic Registration Systems, Inc.

13. Correspondent was a stranger to the transaction, having no relationship with Indymac Bank, FSB purportedly assigned the Deed of Trust to Mortgage Electronic Registration Systems, who assigned the Deed of trust to Wells Fargo bank Exhibit 5 which assignment of Deed of Trust was recorded in or about May 25, 2005, in the Orange County Recorder's Office as Document Number 2005000402341.

14. Then the stranger to the transaction Mortgage Electronic Registration Systems without mention of Wells Fargo Bank transferred the interest in the property from

Mortgage Electronic Registration, Inc. back to Mortgage Electronic Registration Systems. Inc. recorded on June 1, 2005 in document number 2005000421816

15. Mortgage Electronic Registration Systems Inc. under fraudulent assignment of Indymac Bank FSB Deed of Trust, having no interest in the promissory note, assigned such deed of trust to Deutsche Bank attached such assignment as Exhibit 6 which was cited In Trustee sale and recorded in or about May 2, 2005 in the Orange County Recorder's Office as Document Number 2005000335677.

16. Although there is no valid assignment of the Deed of Trust recorded in the Orange County Recorder's Office, Plaintiffs are informed and believes that Indymac FSB assigned its interest in the Deed of Trust to an unknown entity. That it no longer has an interest in the Deed of Trust or the promissory note secured thereby.

17. MERS was never a party to the transaction, or entitled to payment from Plaintiffs.

18. Plaintiffs are informed and believes that MERS is not a nominee under the Deed of Trust and fraudulently assigned Deed of Trust to Deutsche Bank and, that MERS never had any interest in the Deed of Trust or the promissory note secured thereby.

19. One West Bank's fraudulent claim under the Deed of Trust is entirely unsecured and there is no security that attaches to the Deed of Trust.

20. In this case, foreclosure has been filed, the entity filing the foreclosure has no pecuniary in the mortgage loan. The foreclosing entity is a third party. The entity lacks standing and the capacity to foreclose. The entity has no first hand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan. The entity has no legal authority to draft mortgage assignments relating to the loan. The foreclosing entity and its agents

regularly commit perjury in relation to their testimony.

21.   Indymac Bank FSB "Lender", on the original Promissory Note was not the lender. The originators of the loan immediately and simultaneously secured the note. The beneficial interest in the note was never in the lender. In this case, MERS, acting as nominee for Indymac under the assignment of Deed of Trust, was never intended to be the assignee of the mortgage loan. The Servicer, like Onewest Bank, or some party has or is about to declare the default, is not in privity with the lender. The true owner or beneficiary of the mortgage loan has not declared a default and usually no longer has an interest in the note.

22.   The obligations reflected by the note allegedly secured by assignment of Deed of Trust to MERS have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligation on which to base any foreclosure on the property owned by Plaintiffs. Defendants have and continued to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Plaintiffs when they do not have lawful rights to foreclose, are not holders in due course of the notes.

23.   The mortgage loan assigned to MERS as nominee, is at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holders in due course and beneficial owners of the original Promissory Note.

24.   Certain individuals who were the employees of the Servicer, Onewest Bank, and even the employees of the law firm executed and notarized forged documents as to the ownership of the loan. The affiants have committed counts of fraud, perjury, and

forgery of the mortgage loan.

25. Defendant Deutsche Bank, represented itself as a "Trust" coming to Court are actually Mortgage Back Securities ("MBS"). The Servicers, like Onewest, are merely administrative entities which collect mortgage payments and escrow funds. The MBS have signed themselves up under oath with the Security Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-through" entities wherein they can never own the mortgage loan assets in the MBS. This allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as MBS is a qualified REMIC, no income tax will be charged to the MBS.

26. Importantly, Deutsche Bank as "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the MBS in the year MBS "closed." Every mortgage in the MBS should have been publicly recorded in Orange County where the property is located with a mortgage in the name of "Residential Asset Securitization Trust 2007-AR21, Mortgage Pass-through Certificates, Series 2007-AR21 under the pooling and servicing agreement dated October 1, 2007." Such mortgage would have had been publicly recorded in the year 2007.

27. The "Trusts" were never registered as Trusts. The promissory note was never obtained and the mortgages never obtained or recorded.

28. In this scenario, even if the foreclosing entity produces a copy of the note, or even an alleged original, the mortgage loan was not conveyed into the trust under the requirements of the prospectus for the trust or the REMIC requirements of the IRS.

29.   Consequentially, the end result would be that the required MBS asset, or any part thereof (mortgage note or security interest), would not have been legally transferred to the trust to allow the trust to ever even be considered a "holder" of a mortgage loan.  Neither the "Trust" or the Servicer, Onewest Bank, would ever be entitled to bring a foreclosure or declaratory action.  The Trust will never have standing or be a real party in interest before this Court as an holder of title to the property.

30.   The transfer of mortgage loans into the Trust in which Deutsche Bank is the Trustee after the "cut-off date" (in this case 2007), destroys the trust's REMIC tax exempt status, and this trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at of one hundred percent (100%).

31.   Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred into a REMIC after that REMIC's "cut off" and "closing dates."

32.   Therefore, the lack of acquisition of Plaintiffs' mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements..

33.   Plaintiffs signed a Promissory Note and Mortgage, they were unknowingly converting their property into an asset of a MBS.  Plaintiffs were never informed of the nature of the scheme.  They were deliberately induced into signing a Negotiable Instrument which was never intended as such, but as intended as collateral for a MBS.

34.   The fact that this loan was meant to fund a MBS was a "Material disclosure" which was deliberately intentionally undisclosed.  The failure to disclose the identity of the true lender at closing was also a "material disclosure"; the nature of which would

make the contract voidable under California contract law.

35.     As required by SEC, this MBS/Trust has a Pooling and Servicing Agreement ("PSA") which dated October 1, 2007 and must be publicly filed.  The only purpose for the PSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the MBS.  The investors who put up money for the MBS and who received the MBS certificates or Bonds, are not parties to the PSA.

36.     The PSA merely sets forth what happens after the mortgages are bundled together.  However, the PSA also sets forth a *Cut Off Date.*  The Cut Off Date is the date on which all mortgage loans in the MBS/Trust must be identified and set out in the SEC required list of mortgage loans.

37.     Like the cut off date, this MBS/Trust had a *Closing Date,*  The Closing Date is the date that the individual identified mortgages were to be transferred through the Custodian for the benefit of the investors.  The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been transferred for the benefit of the investors.  Further, proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the mortgage itself.  This MUST have occurred by the closing date.

38.     One West Bank as attorney in fact for Deutsche Bank, as MBS trustee claims to be acting on behalf of the MBS/Trust and claims that it has acquired the loan from MERS, who was not a party in deed of trust.  The multiple transfers of title of the

mortgage loan between the originator, and the MBS/Trust is simply ignored as it can never be proved or shown to the Court.  Chain of Mortgage assignment is broken as CORRESPONDENT and MERS were never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS.

39.   The assignment of Plaintiffs' mortgage were signed and notarized many years after the actual date of the loan and the date listed with the SEC and IRS as the "Closing" of the REMIC.  In this case if found to be true, this MBS/Trust has been operating illegally as a tax exempt REMIC.

40.   Here, the Note and Mortgage were severed or bifurcated when the PHH deed of trust was fraudulently assigned to MERS as nominee for Indymac.  Indymac never loaned any money to the Plaintiffs.  MERS was never a beneficiary under the Note.  MERS purportedly held the Mortgage as "nominee" for Indymac, an assignee of fraudulently conveyed deed of trust.  Since then, the only party who could authorize the mortgage assignment for a bankrupt mortgage assignees would be the Bankruptcy Trustee.  In this case, MERS mortgage has been assigned on behalf of a bankruptcy entity, a criminal violation of the bankruptcy code has occurred.

41.   An assignment from MERS was a legal nullity.  MERS never had an interest in this fraudulently conveyed mortgage and Note.

42.   MERS assigned mortgage was prepared by an agreement between the Defendants.  These Defendants used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be officers of MER.

43.   Defendant Deutsche Bank filed and caused to be filed MERS mortgage and assignments of mortgage in the public record and provided these false documents to

prove chain of title that does not exist to the Court as part of its Motion for Relief from Automatic Stay.

44.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 43, inclusive, as though set forth at length herein.

45.    Plaintiffs allege that they hold an interest in the Property free and clear of any interest of defendants as shown by the conveyance of a GRANT DEED from Pacific Sands LLC to Mark Howard Shafer a single man recorded on May 2, 2005 at 3:54pm in Document number 200500335676, in that the lien evidenced by the Deed of Trust has no value since it is wholly unsecured, and that accordingly, the Deed of Trust is null and void and the only free and clear interest in the property stems from the conveyance from Pacific Sands LLC. to Plaintiff Mark Howard Shafer, a single man.

46.    Plaintiff is informed and believes that Defendants allege that the Deed of Trust cannot be determined to be null and void because it is secured by the Property which is Plaintiff's principal residence and is not wholly unsecured.

47.    An actual controversy exists between Plaintiff and Defendants with regard to the validity, nature, and extent of their interest in the Property

48.    It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature, and extent of Defendants' interest in the Property.


WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  That the Court determine the nature and extent and validity of Defendants'

-11-

interest in the real property located at 20361 Newland Street Huntington Beach, CA 92646;

2. That the Court determine that the amount of the lien secured by the Indymac Bank, One West Bank, Mortgage Electronic registration Systems and Deutsche bank National Trust Company Deed of Trust is zero;

3. That the Court determine that the claim owed to Deutsche Bank or One West Bank FSB by Plaintiffs is wholly unsecured;

4. For attorney fees and costs of suit incurred herein; and

5. For such other and further relief as the court deems just and proper.

## THIRD CLAIM FOR RELIEF
### [As to Defendant Deutsche Bank]
### [15 U.S.C. § 1641(g)]

49. Plaintiffs re allege and incorporate the allegations contained in paragraphs 1 through 59, inclusive, as though set forth at length herein.

50. On or about May 17, 2010, MERS purportedly assigned the Deed of Trust to Defendant Deutsche Bank and recorded such assignment in the Orange County Recorder's Office as Document Number 2010000231819.

51. In May 2009, "The Helping Families Save Their Homes Act of 2009" was enacted into law that calls for notice to the consumer when a "mortgage loan" is transferred or assigned. The provision was effective immediately and violations are subject to TILA liability.

52. 15 U.S.C. §1641 was amended by adding at the end the following:

"(g) NOTICE OF NEW CREDITOR –
    (1) IN GENERAL – In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold

*or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-*

    *(A) The identity, address, telephone number of the new creditor;*

    *(B) The date of the transfer;*

    *(C) How to reach an agent ort party having authority to act on behalf of the new creditor;*

    *(D) The location of the place where transfer of ownership of the debt is recorded; and*

    *(E) Any other relevant information regarding the new creditor.".*

53.    To date, Plaintiffs have not received notice as required by 15 U.S.C. §164 (g).

WHEREFORE, Plaintiff prays for judgment against Defendant Deutsche Bank as follows:

1.  Statutory damages according to proof.

2.  For attorney fees and costs of suit incurred herein; and

3.  For such other and further relief as the court deems just and proper.

### FOURTH CLAIM FOR RELIEF
**[As to All Defendants]**
**[Fraud in Conveyance]**

54.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 53, inclusive, as though set forth at length herein.

55.    Correspondent was a stranger to the transaction, having no relationship with Indymac Bank, FSB_purportedly assigned the Deed of Trust to Mortgage Electronic Registration Systems, who assigned the Deed of trust to Wells Fargo bank Exhibit 5 which assignment of Deed of Trust was recorded in or about May 25, 2005, in the Orange County Recorder's Office as Document Number 2005000402341.

56.    These Defendants were a stranger to the transaction, having no interest in the Note or Deed of Trust, nor having any authority from either the original Lender or Plaintiffs to assign the Deed of Trust, together with the Note to anyone.

57.    MERS, a Nominee for INDYMAC purportedly received assignment of the Deed of Trust, together with note.

58.    MERS was and is a foreign corporation, having no authority to conduct business in the State of California fraudulently acted as nominee for Indymac as beneficiary under the Deed of Trust without Plaintiff's consent.

59.    Upon information and belief, Plaintiffs therefore allege that neither MERS, nor One West Bank paid any consideration for the promissory note. Assuming *arguendo* that if Deutsche Bank National Trust purchased the promissory note and paid to Mortgage Electronic Registration Systems Inc. such assignment would constitute fraudulent conveyance.

60.    Upon information and belief, Plaintiffs allege that MERS and One West Bank FSB had full knowledge of such fraudulent conveyance because they accepted the assignment and alleged endorsement of promissory note from MERS who was strangers to the transaction.

61.    Even if MERS and One West Bank FSB did not have such knowledge, their actions were reckless because simple verification of document on its face would reveal that MERS had no connection and was not a party to subject transaction.

62.    All Defendants mentioned herein participated in the fraud by processing falsified assignment of Deed of Trust.

63.    One West Bank falsely represented to Plaintiffs that they received valid assignment of Deed of Trust and enforceable endorsement of promissory note to procure payments from Plaintiffs that they were not entitled to receive.

64.    The representations made by said Defendants were in fact false. The true facts were

that MERS could not act as nominees for Indymac in receiving the assignment of Deed of Trust. In fact, MERS had no interest in the promissory note and could not assign or enforce the promissory note executed in favor of Indymac Bank FSB On or about March 9, 2010 WILLIAMS falsely represented that he is the Assistant Vice President of MERS, fraudulently executed an Assignment of Deed of Trust purportedly assigned together with the note and all rights accrued under Deed of Trust to Defendant Deutsche Bank.

65.  When Defendant WILLIAMS made their representations, she knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs to induce them to act in reliance on these representations in the manner herein alleged with the expectation that Plaintiffs would so act.

66.  Plaintiffs, at the time these representations were made by Defendants and at the time Plaintiffs took the actions alleged herein, was ignorant of the falsity of the Defendants' representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to make payments to these Defendants when they were not entitled to such money.

67.  The aforementioned conducts of the Defendants were intentional misrepresentation, deceit, or concealment of material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving the Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

### FIFTH CLAIM FOR RELIEF
[As to All Defendants and All Persons Claiming by, Through, or Under Such Person, All

**Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title Thereto and DOES 1-150]**
**[LIBEL]**

68.   Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 67, inclusive, as though set forth at length herein.

69.   The conduct of Defendants constitute libel that tends to defame, disparage, and injure Plaintiffs in their business and reputation and has also caused pain and suffering.

70.   Such libel has occurred on a continuing basis from approximately March 11, 2010 upon publication of the NOTICE OF DEFAULT through the present.

71.   As a result of Defendants' acts and omissions, Plaintiffs have been injured in an amount yet to be ascertained.

72.   The conduct of these Defendants as alleged herein was willful, fraudulent, malicious, and oppressive. As a result, Plaintiffs request an award of punitive damages.

**SIXTH CLAIM FOR RELIEF**
**[As to One West Bank and All Persons Claiming by, Through, or Under Such Person, All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title Thereto and DOES 1-150]**
**[QUIET TITLE]**

73.   Plaintiffs re-allege and incorporate the allegatiosn contained in paragraphs 1 through 72, inclusive, as though set forth at length herein.

74.   Plaintiffs are the owner of the 20361 Newland Street Huntington Beach, CA real property now held by the Plaintiffs' estate.

75.   The basis of Plaintiffs' title is a deed granting the above-described property in fee

simple to Plaintiffs.

76.   Plaintiffs are informed and believe and on such information and belief allege that all named Defendants and DOES 1-150 and all persons claiming, by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the Complaint adverse to Plaintiffs' title thereto, claim an interest adverse to Plaintiff in the above-described property as adverse interest the holder of a deed of trust against the subject property.   The deed of trust was recorded on May 2 2005 in the Official Records of the County of Orange, as document number 2005000335676 Some of the Defendants including Deutsche Bank, MERS and unknown defendants, specifically those additionally designated as DOES 1-150, inclusive claim interests in the property adverse to Plaintiffs as assignees and successors of Defendants.

77.   Plaintiffs are seeking to quiet title as of a date to be determined.

WHEREFORE, Plaintiffs pray for judgment on their Third through Sixth claims as follows:

1.   General Damages in the sum of $1,000,000.00;

2.   Special damages in the sum of $750,000.00;

3.   For punitive damages in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct;

4.   For attorney and costs; and

5.   For attorney fees and costs of suit incurred herein; and

6.   For such other and further relief as the court deems just and proper.

DATED: 12/1/10

Respectfully Submitted;

Kenneth A. Roberts
Attorney for Plaintiff

I verify that the foregoing Complaint has been reviewed by me; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Laguna Hills, California on 12-1 , 2010.

DATED: 12-1-2010

Mark H. Shafer
Plaintiff

-18-

EXHIBIT 1

This Document was electronically recorded by
Fidelity National Default 6

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

AZTEC FORECLOSURE CORPORATION
3300 N. Central Ave. Suite, 2200
Phoenix, AZ 85012

15.00
2010000118429 04:04pm 03/11/10

66 406 N16 3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Space above this line for recorder's use only

Trustee Sale No. 10-513733INC  Title Order No. 100163240-CA-DC1

IMPORTANT NOTICE
NOTICE OF DEFAULT AND ELECTION TO SELL
UNDER DEED OF TRUST

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION, and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property. No sale date may be set until three months from the
date this notice of default may be recorded (which date of recordation appears on this notice).

This estimated amount is $17,921.42 as of March 11, 2010 and will increase until your account
becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and
taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on
the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as
required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that
you do so in order to reinstate your account in good standing. In addition, the beneficiary or
mortgagee may require as a condition to reinstatement that you provide reliable written evidence
that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the
entire amount you must pay. You may not have to pay the entire unpaid portion of your account,
even though full payment was demanded, but you must pay all amounts in default at the time
payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing
prior to the time the notice of sale is posted (which may not be earlier than the end of the three-
month period stated above) to, among other things, (1) provide additional time in which to cure
the default by transfer of the property or otherwise; or (2) establish a schedule of payments in
order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor
permits a longer period, you have only the legal right to stop the sale of property by paying the
entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your
property is in foreclosure for any other reason, contact: Deutsche Bank National Trust Company,
as Trustee of the IndyMac INDX Mortgage Trust 2007-AR21, Mortgage Pass-Through Certificates,
Series 2007-AR21 under the Pooling and Servicing Agreement dated October 1, 2007, C/O Aztec
Foreclosure Corporation, 3300 N. Central Ave., Suite 2200, Phoenix, AZ 85012, (602) 222-5711 or
(800) 731-0850.

T.S. #: 10-513733INC    ORDER #: 100163240-CA-DCI

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Trustee under a Deed of Trust dated 04/22/05, executed by Mark Howard Shafer, a Single Man, as trustor to secure obligations in favor of Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank, as Beneficiary recorded on May 2, 2005 in Instrument No. 2005000335877 in the Office of the Recorder of ORANGE County, California, as more fully described on said Deed of Trust. Including the note(s) for the sum of $540,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE 12/01/09 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES AND ANY DELINQUENT TAXES AND/OR INSURANCE PREMIUMS ADVANCED BY THE BENEFICIARY.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached declaration pursuant to CALIFORNIA CIVIL CODE §2923.5

DATE: 03/11/10

AZTEC FORECLOSURE CORPORATION
As Trustee, By LSI Title Company, As Agent

Marco Marquez

MARK SHAPER

## DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☐ The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

☐ the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

☐ the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

☐ the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

INDYMAC MORTGAGE SERVICING

Date: 12/4/2009          By: _Katherine Brackins_

_Katherine Brackins_

Loan Number:            1005597115
File Number:            10-513733INC

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS PRACTICES ACT,
### 15 USC 1692, ET SEQ.

The following information is provided as required by the Federal Fair Debt Collections Practices Act:

1.      As of March 9, 2010 our client has advised that the amount of the debt is $556,757.64.

2.      The creditor to whom the debt is owed is: OneWest Bank, FSB.

3.      The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter. If you do not dispute the debt within this period, it will be assumed to be valid by this office. The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, our client OneWest Bank, FSB. If you choose to dispute the debt, or any portion thereof, you must notify us within thirty (30) days of the date you receive this letter.

4.      If you notify us in writing within (30) days of the date you receive this letter that you are disputing the debt or any portion thereof, or if you notify us in writing within thirty (30) days of the date you receive this letter that you want to know the name of the original creditor if that creditor is different from our client, OneWest Bank, FSB, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

5.      The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this letter before initiating foreclosure proceedings to foreclose your deed of trust. In the event we do initiate foreclosure proceedings to foreclose your deed of trust, within thirty (30) days from the date you receive this letter, you will still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client OneWest Bank, FSB.

6.      If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose the deed of trust on your property, even if we have already initiated the foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name of the original creditor.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, call 1(800)731-0850, or write to the Fair Debt Clerk at the address provided below.

Any written request should be addressed to:

        Attention: Fair Debt Dept
        Aztec Foreclosure Corporation
        3300 N. Central #2200
        Phoenix, AZ 85012

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Please be advised that if your personal liability for this debt has been modified or extinguished by a discharge in bankruptcy, this Notice is provided solely to foreclose the deed of trust remaining on your property and is not an attempt to collect the discharged personal obligation.

EXHIBIT 2

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Christopher J. Hoo 256166<br>Randall S. Miller & Associates, P.C.<br>15165 Ventura Blvd., Suite 330<br>Sherman Oaks, CA 91403<br>(818)574-3139<br><br>☐ Individual appearing without counsel<br>☒ Attorney for: OneWest Bank, FSB | |

<table>
<tr><td colspan="2" align="center"><strong>UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA</strong></td></tr>
<tr><td>In re:<br>Mark H. Shafer<br><br><br><br>Debtor(s).</td><td>CHAPTER: 7<br><br>CASE NO.: 10-22011<br><br>DATE:   10/19/10<br>TIME:   10:30 am<br>CTRM:   5D<br>FLOOR: 5</td></tr>
</table>

### NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT:  OneWest Bank, FSB                              )
### (Real Property)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. Hearing Location:   ☐  255 East Temple Street, Los Angeles          ☒  411 West Fourth Street, Santa Ana
   
   ☐  21041 Burbank Boulevard, Woodland Hills          ☐  1415 State Street, Santa Barbara
   
   ☐  3420 Twelfth Street, Riverside

3. a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

   b.  ☐  This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

   ☐ at the hearing          ☐ at least _____ court days before the hearing.

   (1)  ☐  A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2)  ☐  A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

   (3)  ☐  A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                        **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 2 of 11*   **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE)<br><br>Debtor(s). | CHAPTER: 7<br><br>CASE NO.: 10-22011 |
|---|---|---|

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: 9/21/10

Law Offices of  Randall S. Miller & Associates, PC
*Print Law Firm Name (if applicable)*

Christopher Hoo (P-256166)  /s/Christopher J. Hoo
*Print Name of Individual Movant or Attorney for Movant*   *Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*   **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 3 of 11

**F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|-------|---------------|------------|
| Mark H. Shafer | | |
| | Debtor(s). | CASE NO.: 10-22011 |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  OneWest Bank, FSB                          )

1.  **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

    *Street Address:* 20361 Newland Street
    *Apartment/Suite No.:*
    *City, State, Zip Code:* Huntington Beach, CA 92646

    Legal description or document recording number (including county of recording):
    Orange County, Instrument Number 2005000335677
    ☐ See attached continuation page.

2.  **Case History:**
    a.  ☒ A voluntary  ☐ An involuntary   petition under Chapter   ☒ 7   ☐ 11  ☐ 12  ☐ 13
        was filed on *(specify date)*: 8/27/10
    b.  ☐ An Order of Conversion to Chapter   ☐ 7   ☐ 11  ☐ 12  ☐ 13
        was entered on *(specify date)*:
    c.  ☐ Plan was confirmed on *(specify date)*:
    d.  ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached Declaration.

3.  **Grounds for Relief from Stay:**
    a.  ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:
        (1) ☒  Movant's interest in the Property is not adequately protected.
            (a) ☒  Movant's interest in the collateral is not protected by an adequate equity cushion.
            (b) ☐  The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
            (c) ☐  No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).
            (d) ☐  Payments have not been made as required by an Adequate Protection Order previously granted in this case.
        (2) ☐  The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.
            (a) ☐  Movant is the only creditor or one of very few creditors listed on the master mailing matrix.
            (b) ☐  Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.
            (c) ☐  The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.
            (d) ☐  Other (See attached continuation page).

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 4 of 11

**F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE)<br><br>Debtor(s). | CHAPTER: 7<br>CASE NO.: 10-22011 |
|---|---|---|

(3) ☐ *(Chapter 12 or 13 cases only)*

    (a) ☐ Postconfirmation plan payments have not been made to the Standing Trustee.

    (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

(4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. Evidence in Support of Motion: *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

b. ☐ Other Declaration(s) are also attached in support of this Motion.

c. ☒ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules.  Authenticated copies of the relevant portions of the Schedules are attached as Exhibit  4  .

d. ☐ Other evidence *(specify)*:

6. ☐ An optional Memorandum of Points and Authorities is attached to this Motion.

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. ☒ Additional provisions requested:

    a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b. ☒ That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

    c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 5 of 11*                      **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

      d. ☐ For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 9/21/10

                                         Respectfully submitted,

                                         OneWest Bank, FSB
                                         *Movant Name*

                                         Law Offices Randall S. Miller & Associates, P.C.
                                         *Firm Name of Attorney for Movant (if applicable)*

                                         By: _____
                                         *Signature*

                                         Name:  Christopher Hoo (P-256166)   /s/Christopher J. Hoo
                                         *Typed Name of Individual Movant or Attorney for Movant*

*December 2009*

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 6 of 11 | **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| Mark H. Shafer | | |
| | Debtor(s). | CASE NO.: 10-22011 |

## REAL PROPERTY DECLARATION
(MOVANT: OneWest Bank, FSB )

I, _____ Chamagne Williams _____ , declare as follows:
*(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

    ☐ I am the Movant and owner of the Property.

    ☐ I manage the Property as the authorized agent for the Movant.

    ☒ I am employed by Movant as *(state title and capacity)*:   Assistant Vice President

    ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. a. The address of the Property that is the subject of this Motion is:

    *Street Address:* 20361 Newland Street
    *Apartment/Suite No.:*
    *City, State, Zip Code:* Huntington Beach, CA 92646

   b. The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit 1.

    ☐ See attached page.

4. Type of property *(check all applicable boxes)*:
    a. ☒ Debtor's(s') principal residence   b. ☒ Other single family residence
    c. ☐ Multi-unit residential   d. ☐ Commercial
    e. ☐ Industrial   f. ☐ Vacant land
    g. ☐ Other *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - Page 7 of 11

**F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

5. Nature of Debtor's(s') interest in the Property:

    a.  ☒ Sole owner

    b.  ☐ Co-owner(s) *(specify)*:

    c.  ☐ Lien holder *(specify)*:

    d.  ☐ Other *(specify)*:

    e.  ☒ Debtor(s)  ☒ did    ☐ did not  list the Property in the Schedules filed in this case.

    f.  ☒ Debtor(s) acquired the interest in the Property by  ☐ grant deed  ☐ quitclaim deed  ☒ trust deed

        The deed was recorded on:  5/2/05

6. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 439,394.52 |
| b. | Accrued Interest: | $ | $ | $ 22,276.18 |
| c. | Late Charges: | $ | $ | $ 939.59 |
| d. | Costs (Attorney's Fees, Other Costs): | $ | $ | $ 700.00 |
| f. | Advances (Property Taxes, Insurance): | $ | $ | $ 8,223.02 |
| g. | TOTAL CLAIM as of _9/13/10_ : | $ | $ | $ 471,533.31 |

    h.  ☐ Loan is all due and payable because it matured on *(specify date)*:

7. Movant holds a ☒ , deed of trust  ☐ judgment lien  ☐ other *(specify)*
that encumbers the Property.

    a.  A true and correct copy of the document as recorded is attached as Exhibit _1_ .

    b.  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _2_ .

    c.  ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _3_ .

8. Status of Movant's claim relating to the Property *(fill in all applicable information requested below)*:

    a.  Current interest rate: 6.1250%

    b.  Contractual maturity date: 6/1/35

    c.  Amount of current monthly payment: $ 4,070.78

    d.  Number of PREPETITION payments that have come due and were not made: _9_  Total amount: $ 36,637.02

    e.  Number of POSTPETITION payments that have come due and were not made: _1_  Total amount: $ 4,078.78

    f.  Date of POSTPETITION default: 12/1/09

    g.  Last payment received on the following date: 11/1/09

    h.  Notice of default recorded on the following date: 3/11/10

    i.  Notice of sale recorded on the following date:

    j.  Foreclosure sale originally scheduled for the following date:

    k.  Foreclosure sale currently scheduled for the following date:

    l.  Foreclosure sale already held on the following date:

    m.  Trustee's deed on sale already recorded on the following date:

    n.  Future payments due by time of anticipated hearing date *(if applicable)*:

        An additional payment of $ _____ will come due on $ _____ , and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

9. Attached hereto as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 8 of 11.

**F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s). | CASE NO.: 10-22011 |

10. ☒ *(Chapter 7 and 11 cases only)*:  The fair market value of the entire Property is $ 460,000.00 _____, established by:

  a. ☐ Appraiser's declaration with appraisal attached herewith as Exhibit _____.

  b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____

  c. ☒ A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit _4___

  d. ☐ Other *(specify)*: ‾

11. ☐ The fair market value of the Property is declining based on/due to: _____

12. ☒ Calculation of equity in Property;

  a. Based upon ☐ preliminary title report ☒ Debtor's(s') admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled<br>by Debtor(s) (if any) | Amount Known to<br>Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | IndyMac | $639,394.00 | $471,533.31 |
| 2nd Deed of Trust: | IndyMac | $71,056.00 | $71,066.00 |
| 3rd Deed of Trust: | | | |
| Judgment Liens: | | | |
| Taxes: | | | |
| Other: | | | |
| **TOTAL DEBT: $ 610,450.00** | | | |

  b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit _1,4____, and consists of:

    ☐ Preliminary title report

    ☒ Relevant portions of Debtor's(s') Schedules as filed in this case

    ☐ Other *(specify)*:

  c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $ -160,450.00 _____ (§ 362(d)(2)(A)).

  d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ -92,569.31 _____ (§ 362(d)(1)).

  e. Estimated costs of sale: $ _____ (Estimate based upon _____ % of estimated gross sales price)

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

  a. 341(a) Meeting currently scheduled for (or concluded on) the following date;
    Confirmation hearing currently scheduled for (or concluded on) the following date:
    Plan confirmed on the following date *(if applicable)*:

  b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| (Number of) _____ payment(s) due at $ _____ | each | = | $ _____ |
|---|---|---|---|
| (Number of) _____ payment(s) due at $ _____ | each | = | $ _____ |
| (Number of) _____ late charge(s) at $ _____ | each | = | $ _____ |
| (Number of) _____ late charge(s) at $ _____ | each | = | $ _____ |

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 9 of 11.*       **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s). | CASE NO.: 10-22011 |

c.   Postpetition/preconfirmation advances or other charges due but unpaid:        $ i_____
     (See attachment for details of type and amount.)

**TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:   $**_____

d.   Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation *(if applicable)*:

| (Number of) _____ | payment(s) due at $_____ | each | = | $_____ |
| (Number of) _____ | payment(s) due at $_____ | each | = | $_____ |
| (Number of) _____ | late charge(s) at $_____ | each | = | $_____ |
| (Number of) _____ | late charge(s) at $_____ | each | = | $_____ |

e.   Postconfirmation advances or other charges due but unpaid:        $_____
     (See attachment for details of type and amount.)

**TOTAL POSTCONFIRMATION DELINQUENCY:   $**_____

f.   ☐  The claim is provided for in the Chapter 12 or 13 Plan. Plan payment history is attached as Exhibit _____.

g.   ☐  See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan (attach *Court Form F 4001-1M.13*).

14.  ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15.  ☐  The court determined that the Property qualifies as single asset real estate on _____. More than 90 days have passed since the filing of the petition, more than 30 days has passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time  or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16.  ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17.  ☐  The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

   a.   ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b.   ☐  Multiple bankruptcy filings affecting the Property. The multiple bankruptcy filings include the following cases:
   1.   Case Name:
        Case Number:                    Chapter:
        Date Filed:                     Date Dismissed:              Date Discharged:
        Relief from stay re this property    ☐ was    ☐ was not  granted.
   2.   Case Name:
        Case Number:                    Chapter:
        Date Filed:                     Date Dismissed:              Date Discharged:
        Relief from stay re this property    ☐ was    ☐ was not  granted.
   3.   ☐  See attached continuation page for more information about other bankruptcy cases affecting the Property.

        ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                       **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 10 of 11*                **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

18. ☐  Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

   a. ☐  These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions;

   b. ☐  Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

   c. ☐  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on ____ Sept. 16 , 2010 , at _____ Austin   Texas _____ *(city, state)*.


Chamagne Williams      Assistant Vice President

*Print Declarant's Name*                              *Signature of Declarant*

*December 2009*                                                                          **F 4001-1M.RP**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

60.00

2005000335677 03:54pm 05/02/05
113 32 D11 19

0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

Recording Requested By:
IndyMac Bank, F.S.B. c/o Document Management

*[Company Name]*

And When Recorded Mail To:
IndyMac Bank, F.S.B. c/o Document Management

*[Company Name]*

*[Name of Natural Person]*
3465 E. Foothill Blvd.

*[Street Address]*

Pasadena, CA 91107

*[City, State Zip Code]*

_____*[Space Above This Line For Recording Data]*_____

# DEED OF TRUST

MIN: 100055401210386340

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)     "Security Instrument" means this document, which is dated         April 22, 2005
together with all Riders to this document.

(B)     "Borrower" is   Mark Howard Shafer, a single man

. Borrower is the trustor under this Security Instrument.

(C)     "Lender" is   IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a          Federal Savings Bank              organized and existing under the laws of
United States of America         . Lender's address is    155 North Lake
Avenue, Pasadena, CA 91101

(D)     "Trustee" is   First American Title Insurance Co

(E)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 1 of 13                                    14341CA 08/00
www.compliancesource.com                                                                          © 1999, The Compliance Source, Inc.

(F)    "**Note**" means the promissory note signed by Borrower and dated    April 22, 2005    . The Note states that Borrower owes Lender    five hundred forty thousand and NO/100ths

Dollars (U.S. $ 540,000.00    )

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    May 1, 2035

(G)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] 1-4 Family Rider | [ ] Revocable Trust Rider | |
| [ ] Other(s) [specify] | | |

(J)    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "**Escrow Items**" means those items that are described in Section 3.

(N)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Public Record

Order: Non-Order Search  Doc: OR:2005 00335677    Page 2 of 19    Created By: lindaling. Printed: 3/9/2010 11:19:43 AM P

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the ......... County ......... of ......... Orange ......... :
                                                                  [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

See Exhibit "A" attached hereto and made a part hereof.

APN# 151-304-36

Assessor's Identification Number:    151-304-36

which currently has the address of .................... 20361 Newland Street
                                                                                  [Street]

Huntington Beach ............, California   92646    ("Property Address"):
        [City]                                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                     Page 3 of 13                                  14301CA 08/00
www.compliancesource.com                                                                                    © 2000, The Compliance Source, Inc.

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No.: 121038634

California Deed of Trust-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—    Page 4 of 13    1463 1CA 08/00
www.compliancesource.com    © 2000, The Compliance Source, Inc.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                        Page 5 of 13                                          1438CA  08/00
www.compliancesource.com                                                                                          © 2000, The Compliance Source, Inc.

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. · Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No:  121038634

California Deed of Trust-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                     Page 6 of 13                         14301CA 08/00
www.compliancesource.com                                                                          © 2000, The Compliance Source, Inc.

Public Record

obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Loan No:  121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                               MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                               Page 7 of 13                               1430ICA 08/08
www.compliancesource.com                               © 2000, The Compliance Source, Inc.

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 8 of 13

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                         Page 9 of 13                     1401CA 08/00
www.compliancesource.com                                                                              © 2000, The Compliance Source, Inc.

Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials;  (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection;  (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

Loan No:  121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005  01/01
—THE COMPLIANCE SOURCE, INC.—                                        Page 10 of 13                                      14501CA  08/00
www.compliancesource.com                                                                                        © 2000, The Compliance Source, Inc.

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Loan No: 121038634
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                         MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 11 of 13                                             14301CA  08/00
www.compliancesource.com                                                                                                  © 2000, The Compliance Source, Inc.

Public Record

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Mark Howard Shafer                                -Borrower
                                                  [Printed Name]

_____ (Seal)
                                                  -Borrower
                                                  [Printed Name]

_____ (Seal)
                                                  -Borrower
                                                  [Printed Name]

_____ (Seal)
                                                  -Borrower
                                                  [Printed Name]

[Acknowledgment on Following Page]

Loan No: 121038634
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                        Page 12 of 13                              14001CA 08/00
www.compliancesource.com                                                              © 2000, The Compliance Source, Inc.

State of
County of _____

On _____, before me,
personally appeared           Mark Howard Shafer                    [name and title of officer]

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)

### REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:
        The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of
the Recorder of _____ County, State of California, in book _____, page _____ of official records.
Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty,
all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____          Date: _____
          (Trustee)

Loan No: 121038634
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—          Page 13 of 13          1439CA 08/00
www.compliancesource.com          © 2000, The Compliance Source, Inc.

Lenders Choice Title Company
3850 Royal Ave.
Simi Valley, CA 93063
Phone: (800) 803-2658



## ACKNOWLEDGEMENT

STATE OF CALIFORNIA

COUNTY OF _Orange_

On _April 23, 2005_, before me, _Teresa E. Vaughn_, Notary Public, personally appeared

_Mark Howard Shafer_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(X), whose name(X) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(X), or the entity upon behalf of which the person(X) acted, executed the instrument.

WITNESS my hand and official seal.

_Teresa E. Vaughn_
Notary Public

> TERESA E. VAUGHN
> COMM # 1460049
> NOTARY PUBLIC-CALIFORNIA
> ORANGE COUNTY
> My Commission Expires May 25, 2008

ca-ack.doc rev.4/6/2005  Page 1 of

# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index – Rate Caps)

Loan #: 121038634                                     MIN: 100055401210386340

THIS FIXED/ADJUSTABLE RATE RIDER is made this  22nd  day of  April    2005    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to  IndyMac Bank, F.S.B., a
federally chartered savings bank

("Lender") of the same date and covering the property described in the Security Instrument and located at:
20361 Newland Street, Huntington Beach, CA 92646

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of   6.125            %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
May    2010      , and the adjustable interest rate I will pay may change on that
day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable
interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."



MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX- Single Family                6008
Page 1 of 4                                                  8/03
8480648 (0008)                        VMP Mortgage Solutions (800)521-7291             Initials: MH

Public Record

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths                                    percentage points (      2.750      %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.125         % or less than         2.750         %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than         12.125         %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment due after the first Change Date.

Loan No: 121038634

8480548 (0308)                                   Page 2 of 4                          Initials: _MHS_                     6008
                                                                                                                        8/03

Public Record

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Loan No:  121038634

B480848 (0509)                                    Page 3 of 4                        Initials: MHS                  8008
                                                                                                                  8/03

Public Record

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.



_____ (Seal)        _____ (Seal)
Mark Howard Shafer       -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                               -Borrower

                                                                6908
8480546 (0309)                     Page 4 of 4                   8/03

Loan No: 121038634

SCHEDULE "A"

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF ORANGE:

LOT 98 OF TRACT NO. 3595, IN THE CITY OF HUNTINGTON BEACH, COUNTY
OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 137,
PAGES 19 AND 20, MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 151-304-36; SOURCE OF TITLE IS DOC. NO. 2004000572224
(RECORDED 06-23-2004)

03/07/2005 11:00:38 [Elizabeth Congos]

Public Record

# FIXED/ADJUSTABLE RATE NOTE
# INTEREST ONLY FIXED PERIOD

(One-Year Treasury Index (As Published In *The Wall Street Journal*)-Rate Caps)

Loan # 121038634

*Lender's First Choice certifies this document to be a true and correct copy.*

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

April 22, 2005                     Simi Valley                        California
[Date]                                  [City]                                [State]

20361 Newland Street, Huntington Beach, CA 92646
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 540,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is   IndyMac Bank, F.S.B., a federally chartered savings bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.125   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on   June,   2005   . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal, interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal If, on   May 1, 2035   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826   or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,756.25   before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHARGES
   (A) Change Dates
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  May,   2010
              and the adjustable interest rate I will pay may change on that day every 12th   month
thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my
adjustable interest rate could change, is called a "Change Date."
   (B) The Index
   Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly
average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the
Federal Reserve Board. The most recent Index figure available as of 45 days before each Change Date is called the "Current
Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.
   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding two and  750/1000ths
              percentage points (   2.750   %) to the Current Index. The Note Holder will
then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated
in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially
equal payments. The result of this calculation will be the new amount of my monthly payment.
   (D) Limits on Interest Rate Changes
   The interest rate I am required to pay at the first Change Date will not be greater than      11..125   % or less
than   2,750       %. Thereafter, my adjustable interest rate will never be increased or decreased on any
single Change Date by more than   2      percentage points from the rate of interest I have been paying for the preceding
   12   months. My interest rate will never be greater than      12.125   %.
   (E) Effective Date of Changes
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
   (F) Notice of Changes
   Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or
mail to me a notice of such change. The notice will include information required by law to be given to me and also the title
and telephone number of a person who will answer any question I may have regarding the notice.
   (G) Date of First Principal and Interest Payment
   The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest
Payment Due Date") shall be the first monthly payment date after the first Change Date.

5.   BORROWER'S RIGHT TO PREPAY
   I have the right to make payments of principal at any time before they are due. A payment of principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not
designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly
payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period
when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of
the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments
consist of  principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first
Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an
interest rate increase.

6.   LOAN CHARGES
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such

Loan No:  121038634

8480610 (0306)                                    Page 2 of 5

Form 6000
7/2003

loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000      % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Loan No: 121038634

8480510 (0300)                                          Page 3 of 5                                                Form 6000
                                                                                                                 7/2009

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Mark Howard Shafer          -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower


Pay to the order of

_____
Without Recourse                    [Sign Original Only]

Peggy LaDuke
Assistant Secretary
IndyMac Bank, F.S.B.


Loan No: 121038634
8480610 (0305)                      Page 5 of 5                    Form 8000
                                                                   7/2003



This Document was electronically recorded by
DSI Title Company

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||   12.00
2010000234818 03:52pm 05/17/10
37 402 A82 2
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

OneWest Bank, FSB
888 E. Walnut Street
Pasadena, California 91101

Trustee Sale No. 10-513733 MC
1005897115
Title Order No. 100169240-CA-DCI
APN: 154-404-30

Space above this line for recorder's use only

# ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank, as Assignor, by these presents does hereby grant, sell, convey, and transfer to Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR21, Mortgage Pass-Through Certificates, Series 2007-AR21 under the Pooling and Servicing Agreement dated October 1, 2007 all beneficial interest under that certain Deed of Trust dated 04/27/07, executed by Mark Howard Shuler, a Single Man, as Trustor(s) to First American Title Insurance Co., as Trustee Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank and Recorded on 05/02/07 as Instrument No. 2008000335677 of official records in the Office of the County Recorder of ORANGE County, CA together with the note(s), other obligations, and money due and to become due thereon, with interest, that are secured by the Deed of Trust described herein.

In witness whereof, the undersigned corporation has executed this Assignment of Deed of Trust by ____Chinnappa Williams____ its ____Assistant Vice President____, who is duly authorized by a resolution of its board of directors to execute this assignment.

This assignment has an effective date of 03/09/2010

Continued on next page

T.S. # 100102133 INC
100850711
TILE ORDER #: 100161240-CA-DCI

DATED: 3/9/10

Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a
United States Of America Federal Savings Bank

By _____
Its _____
Chomagna Williams
Assistant Vice President

State of _____ Texas

County of _____ Travis

On 3/4/10 before me, _____ Anna Ramsey _____, a Notary Public in and
for said State, personally appeared _____ Chomagna Williams _____ who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument. I certify under
PENALTY OF PERJURY under the laws of the State of _____ Texas _____ that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Notary

Case 8:10-bk-22001-RK Doc 34 Filed 09/27/10 Entered 09/27/10 12:25:43 Desc
Official Form 6A Main Document Schedule A Page 2 of 32

In re _____ MARREN SHABER _____ Case No. _____
Debtor (If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 20301 NEWLAND STREET HUNTINGTON BEACH, CA, 92646 | Fee simple | H | 450,000.00 | 402,000.00 |
| | | | Total | $450,000.00 |

Official Form 6D (12/07)

In re: _____ MARK H. SHAFER _____   Case No. _____
                        Debtor                                        (If known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of the filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, if Any |
|---|---|---|---|---|---|---|---|---|
| Account Number 7081064717 | | H | 2005 FIRST MORTGAGE LOAN | | X | | 539,364.00 | |
| INDYMAC/ONE WEST BANK P.O. BOX 78826 PHOENIX, AZ 85067 | | | | | | | | |
| | | | VALUE $   450,000 | | | | | |
| Account Number 7081000023420 | | H | 2005 SECOND MORTGAGE LOAN | | X | | 71,056.00 | |
| INDYMAC/ONE WEST BANK P.O. BOX 78826 PHOENIX, AZ 85062 | | | | | | | | |
| | | | VALUE $ | | | | | |
| Account Number | | | | | | | | |
| | | | VALUE $ | | | | | |
| | | | Subtotal (Total of this page) | | | | $610,460.00 | .00 |
| | | | Total (Use only on last page) | | | | $610,460.00 | |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data) |

_____0_____ continuation sheets attached

Motion for Relief from Stay (Real Property) - Page 11 of 11     F 4001-1M.RP

| In re | (SHORT TITLE) | CHAPTER: 7 |
| Marik I. Shefer | | CASE NO.: 10-22011 |
| | Debtor(s). | |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
15165 Ventura Blvd., Suite 200
Sherman Oaks, CA 91403

A true and correct copy of the foregoing document described as Notice of Motion and Motion for Relief from the Automatic Stay _____ will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d), and (b) in the manner indicated below:

I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 9/21/10 _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses indicated below:

Jeffrey I Golden - Trustee jtones@wgllp.com, jgolden@ecf.epiqsystems.com
Central District Of California (Santa Ana) ustpregion16.sa.ecf@usdoj.gov

☑ Service information continued on attached page

II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):
On 9/21/10 _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Marik I. Shefer                      Kenneth A Roberts
20301 Newland St                    26970 S Pointe Dr #208
Huntington Beach, CA 92648          Laguna Hills, CA 92653

☐ Service information continued on attached page

III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/21/10 | Christopher Hoo | |
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                F 4001-1M.RP

EXHIBIT 3

[REQUESTED BY]
Nationwide Title Clearing
[WHEN RECORDED MAIL TO]
MARK HOWARD SHAFER
20361 NEWLAND STREET
HUNTINGTON BEACH, CA 92646
(TRUSTOR)

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

2005000421816 04:18pm 06/01/05    12.00
213 110 S15 R01 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Loan: 1004459929
SUBSTITUTION OF TRUSTEE and FULL RECONVEYANCE

Whereas
MARK HOWARD SHAFER  was the original Trustor under that certain Deed
of Trust recorded on 06/23/2004  in the office of the County Recorder
of ORANGE  County, California, as Instrument Number  2004000572225
in Book  , Page

Whereas, the undersigned, as the present Beneficiary(s) under said
Deed of Trust desires to substitute a new Trustee under said Deed of
Trust in place and stead of original Trustee, now therefore, the
undersigned hereby substitutes himself (themselves) as Trustee under
said Deed of Trust and does hereby reconvey without warranty to the
persons legally entitled thereto all Estate now held by it under said
Deed of Trust.

Dated: 05/20/2005
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INDYMAC
BANK, FSB

By:_____
     SUSAN STRAATMANN    ASSISTANT VICE PRESIDENT

STATE OF FLORIDA  COUNTY OF PINELLAS
On   05/20/2005  before me, MARY JO MCGOWAN (#DD0236404) , Notary
Public, personally appeared  SUSAN STRAATMANN , personally known to
me (or proved to me on the basis of satisfactory evidence) to be the
person whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature on the instrument
the person, or entity upon behalf of which the person acted, executed
the same. WITNESS MY hand and official seal.

* * * * * * * * * * * * * *

_____
MARY JO MCGOWAN  (#DD0236404)
Notary Public/Commission expires 07/30/2007

MARY JO MCGOWAN
Notary Public State of Florida
My Commission Exp. July 30, 2007
No. DD 0236404
Bonded through (800) 432-4264
Florida Notary Assn. Inc.

Prepared By:
J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

TMBRC 3682217    NAC419724    10005540

RC1

EXHIBIT 4

**This Document was electronically recorded by Financial Title Company**

WHEN RECORDED MAIL TO:

*Lenders First Choice*

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

26.00

RECORDER'S USE ONLY

2005000335676 03:54pm 05/02/05

113 32 G02 1
112 28 112.47 0.00 20.00 0.00 0.00 0.00 0.00

GRANT DEED  *No Consideration*

APN: 151-304-36

The undersigned grantor(s) declare(s):
Documentary transfer tax is $ 224.95 and is
(x) computed on the consideration or value of property conveyed;
Computed on Full Value of Interest conveyed $ 204,255.00 R & T 11911
City of Huntington Beach

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Pacific Sands LLC, a California limited liability company, as successor in interest to Pacific Sands, A Partnership, does hereby GRANT AND CONVEY to Mark Howard Shafer, a single man, the real property in the County of Orange described as:

Lot 98 Tract 3595, City of Huntington Beach, County of Orange, State of California, as per map recorded in Book 137, Page(s) 19-20 of Miscellaneous Maps, in the office of the County Recorder of said county.

This Grant Deed is being recorded to terminate the Leasehold Estate created by that document recorded July 13, 1961 in Book 5783 Page 659 of official records. The Grantor and Grantee shown above are the successors in interest to the Lessor and Lessee as set forth in said lease.

PACIFIC SANDS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

By _____
Allen M. Brock

Its: Manager

Dated: April 28, 2005

State of California      )
                        ) ss
County of Los Angeles   )

On April 28, 2005 before me, Victor L. Moon, Notary Public, in and for County and State, personally appeared Allen M. Brock, personally known to me or proved to me by satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

MAIL TAX STATEMENTS TO:
Same as Above

Item #1194

VICTOR L. MOON
COMM. #1428930
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. July 5, 2007

GROUND LESSOR OF TRACTS - 3595, 3977, 4094, 4114, 4409 & 4649
in HUNTINGTON BEACH, CALIFORNIA

EXHIBIT 5

Recording Requested By:
AMERICA'S SERVICING COMPANY

When Recorded Return To:
Current Trustor:
MARK SHAFER
20361 NEWLAND STREET
HUNTINGTON BEACH, CA 92646

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||| 6.00

2005000402341 11:17am 05/25/05
211 130 S15  1
0.00  0.00  0.00  0.00  0.00  0.00  0.00  0.00

## SUBSTITUTION OF TRUSTEE

America's Servicing Company #:1205066611 "SHAFER"  Lender ID:526001/401793159  Orange, California
MERS #: 100065400038721167  VRU #: 1-888-679-6377

WHEREAS, the undersigned is the present Beneficiary under the Deed of Trust described below as follows:
  Original Trustor : MARK HOWARD SHAFER, A SINGLE MAN Original Beneficiary: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR INDYMAC BANK, F.S.B.; A FEDERALLY
CHARTERED SAVINGS BANK Dated: 06/21/2004 Recorded:  06/23/2004  In Book/Reel/Liber: N/A Page/Folio: N/A
as Instrument No.: 2004000572224 in the County of Orange and State of California.

AND WHEREAS , the undersigned desires to substitute a different Trustee for the purpose of reconveying said Deed
of TRUST; NOW THEREFORE the undersigned hereby substitutes WELLS FARGO BANK, N.A. as Trustee under
said Deed of Trust.

On May 19th, 2005
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

DARNETTA HARRIS, Assistant Secretary

STATE OF California
COUNTY OF San Bernardino

On May 19th, 2005, before me, TAMMY STURGIS, a Notary Public in and for San Bernardino in the State of
California, personally appeared DARNETTA HARRIS, Assistant Secretary, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

TAMMY STURGIS
Notary Expires: 12/16/2007  #1456797

[Notary seal: TAMMY STURGIS, Comm. #1456797, NOTARY PUBLIC-CALIFORNIA, San Bernardino County, My Comm. Expires Dec. 16, 2007]

(This area for notarial seal)

Prepared By:  Esther Ruiz (106), AMERICA'S SERVICING COMPANY 4185 HALLMARK PARKWAY, MAC # X0702-013, SAN
BERNARDINO, CA 92407

*GR1*GR1WFMF*05/19/2005 09:10:37 AM*WFMF03WFMB000000000000000000657727* CAORANG* 1205066611 CASTATE_TRUST_SUB *ER1*ER1WFMF*

EXHIBIT 6

203

WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3300 N. Central Ave. Suite, 2200
Phoenix, AZ 85012

Space above this line for recorder's use only

Trustee Sale No. 10-513733 INC.
Title Order No. 100163240-CA-DCI
APN 151-304-36

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 04/22/05.
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY
BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF
THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

On 06/30/10 at 12:00 p.m., Aztec Foreclosure Corporation as the duly appointed
Trustee under and pursuant to Deed of Trust Recorded on 05/02/05 in Instrument No.
2005000335677 of official records in the Office of the Recorder of ORANGE
County, California, executed by: Mark Howard Shafer, a Single Man, as Trustor,
Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage
Trust 2007-AR21, Mortgage Pass-Through Certificates, Series 2007-AR21 under the
Pooling and Servicing Agreement dated October 1, 2007, as Beneficiary, WILL SELL
AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale
in lawful money of the United States, by cash, a cashier's check drawn by a state or
national bank, a check drawn by a state or federal credit union, or a check drawn by a
state or federal savings and loan association, savings association, or savings bank
specified in section 5102 of the Financial Code and authorized to do business in this
state), at the north front entrance to the County Courthouse, 700 Civic Center Drive
West, Santa Ana, CA, all right, title and interest conveyed to and now held by it under
said Deed of Trust in the property situated in said County, California described as:
20361 NEWLAND STREET, HUNTINGTON BEACH, CA 92646

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street
address and other common designation, if any, shown herein.  Said sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed

# EXHIBIT "B"



1005597115-FC-18

(8800075429)

RECEIVED

DEC 06 2010

Cert. MAIL

LEGAL DEPT

1. Ken Roberts Esq. CSB 62536
THE LAW OFFICES OF KENNETH A. ROBERTS
2. AND ASSOCIATES
3. 575 Anton Blvd. # 300
Costa Mesa, CA 92626
4. Tel:    (714) 432-6480
5. Fax:    (714) 593-3795
6. Attorney for Plaintiff,

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder                228.00
2010000646319 8:27 am 12/02/10
90 413 N25   76
0.00 0.00 0.00 0.00 222.00 0.00 0.00 0.00

CONFORMED COPY

## **Superior Court for the State of California**

### **County of Orange Central Justice Center**

Mark Shafer an individual

        Plaintiffs,

vs.

Indymac Bank FSB, One West Bank
FSB, Deutsche Bank, Aztec
Foreclosure Corporation,
Mortgage Electronic
Registration System Inc. and
Does 1-150

        Defendants

Case No.:  30-2010-00429212

Notice of Pendency of Action

Notice is given that the above-entitled action was filed
in the above-entitled court on December 1, 2010 by
Mark Shafer, plaintiff, against Indymac Bank FSB, One West Bank
FSB, Deutsche Bank, Aztec Foreclosure Corp., Mortgage Electronic
Registrations Systems, DOES 1-150, defendants. The action affects
title to specific real property identified in the
Complaint. (see exhibit A)

Notice of Pendency of Action

The specific real property affected by the action is located in Orange County, California, and is described as follows:

LOT 98 OF TRACT 3595, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 137, PAGES 19 THROUGH 20, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. PARCEL NUMBER: APN 151-304-36.

Dated December 1, 2010.

Kenneth A. Roberts,
Attorney of Record for Plaintiff

Notice of Pendency of Action

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Indymac Bank FSB,One West Bank FSB,Deutsche Bank,Aztec
Foreclosure Corp.,Mortgage Electronic Registrations Systems,Does1-150

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Mark Shafer an Individual

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 01 2010

ALAN CARLSON, Clerk of the Court

BY: J. TRAN DEPUTY

---

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California<br>Central Justice Center 700 Civic Center Drive West Santa Ana, CA 92701 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2010<br>00429212<br><br>JUDGE SHEILA FELL<br>DEPT. C22 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Ken Roberts and Associates SBN 62536 575 Anton Blvd #300 Costa Mesa, CA 92626

| DATE:<br>*(Fecha)* DEC 01 2010 ALAN CARLSON | Clerk, by<br>*(Secretario)* | JOSEPH TRAN | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412 20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

1  LAW OFFICES OF KEN ROBERTS AND ASSOCIATES
   KEN ROBERTS, Esq. (SBN 62536)
2  575 Anton Blvd #300
   Costa Mesa, CA 92626
3  Tel: (714) 432-6480
   Fax: (714)593-3795
4
   Attorney for Plaintiff
5

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 01 2010

ALAN CARLSON, Clerk of the Court

BY ___ J. TRAN ___ DEPUTY

6

7

8           Superior Court of California County of Orange
            *Central Justice Center*
9

10                                           Case No.:
11                                                   **30-2010**
   Mark Shafer an individual                      **0 0 4 2 9 2 1 2**
12

13              Plaintiffs,                   **COMPLAINT TO DETERMINE THE
                                             NATURE, EXTENT, AND VALIDITY
14  vs.                                      OF LIEN AND TO DISALLOW
                                             SECURED CLAIM, TILA VIOLATION,
15  Indymac Bank FSB, One West Bank FSB,     FRAUD, LIBEL, QUIET TITLE, AND
    Deutsche Bank, Aztec Foreclosure         INJUNCTIVE RELIEF.**
16  Corporation, Mortgage Electronic Registration
17  System Inc. ~~_____~~ and Does 1-150     **JUDGE SHEILA FELL
                                                  DEPT. C22**
18              Defendants

19

20  COMES NOW plaintiff Mark H. Shafer herein, ("Plaintiff"), respectfully alleges the following:

21      1.    Plaintiff is an individual who at all times has resided in the State of California.

22      2.    Plaintiff is bringing this action under the applicable laws of the State of California

23            and the United States of America.

24
25      3.    Plaintiffs is and at all times mentioned herein is the owner and purchaser of real

26            property located at 20361 Newland Street Huntington Beach, CA 92646 (hereinafter

27            referred to as "SUBJECT PROPERTY" and more particularly described as:

28            LOT 98 OF TRACT 3595, IN THE CITY OF HUNTINGTON BEACH,

-1-

COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP
RECORDEED IN BOOK 137, PAGES 19 THROUGH 20, INCLUSIVE OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY. PARCEL NUMBER: APN 151-304-36.

4. Plaintiff is informed and believes that defendant ONE WEST BANK FSB is an
unknown entity doing business in California, Indymac Bank FSB is an unknown
entity, Aztec Foreclosure Corporation is an entity that is incorporated in California,
Mortgage Electronic Registration System Inc. is a Delaware corporation illegally
doing business in California.

5. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as
DOES 1-100, and therefore sue this Defendant by such fictitious names. Plaintiffs
will amend this complaint to allege their true names and capacities when
ascertained. Plaintiffs are informed and believe and thereon allege that each of these
fictitiously named defendants claim some right, title, estate, lien, or interest in the
hereinafter-described property adverse to Plaintiffs' title and their claims, and each
of them, constitute a cloud on Plaintiffs' title to that property.

6. The Defendants herein named as "all persons claiming by, through, or under such
person, all persons unknown, claiming any legal or equitable right, title, estate, lien,
or interest in the property described in the complaint adverse to Plaintiff's title
hereto" (hereinafter referred to as "the unknown defendants") are unknown to
Plaintiffs. These unknown Defendants, and each of them, claim some right, title,
estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs'
title; and their claims, and each of them, constitute a cloud on Plaintiff's title to that

property.

7. The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 1 through 100 inclusive, were the agents and/or employee of the named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

8. The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 51 through 100 inclusive, were the agents and/or employee named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

9. The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 101 through 150 inclusive, were the agents and/or employee of named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

10. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 150, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

-3-

11. On or about March 11, 2010 AZTEC FORECLOSURE CORPORATION filed a Notice of Default, asserting a claim against Plaintiffs in the sum of $17,621.42, and further asserting that said claim is secured by a lien against real property belonging to Plaintiffs located at 20361 Newland Street Huntington Beach, CA 92646 Attached as Exhibit 1 which is Plaintiffs' residence (hereinafter "the Property"). Attached as exhibit 2 to the Motion for Relief from Automatic Stay was a copy of a deed of trust in the amount of $540,000 in favor of Lender, Indymac Bank FSB, a federally chartered savings bank which deed of trust was recorded in or about May 2, 2005 in the Orange County Recorder's Office as Document Number 2005000335677.

12. Although there was purported assignment of the Indymac Bank FSB, a federally chartered savings bank Deed of Trust recorded in the Orange County Recorder's Office, Plaintiff is informed and believes that such assignment was not done by Indymac Bank FSB, a federally chartered savings bank but fraudulently conveyed. To Mortgage Electronic Registration Systems, Inc. attached as Exhibit 3 to Mortgage Electronic Registration Systems, Inc.

13. Correspondent was a stranger to the transaction, having no relationship with Indymac Bank, FSB purportedly assigned the Deed of Trust to Mortgage Electronic Registration Systems, who assigned the Deed of trust to Wells Fargo bank Exhibit 5 which assignment of Deed of Trust was recorded in or about May 25, 2005, in the Orange County Recorder's Office as Document Number 2005000402341.

14. Then the stranger to the transaction Mortgage Electronic Registration Systems without mention of Wells Fargo Bank transferred the interest in the property from

Mortgage Electronic Registration, Inc. back to Mortgage Electronic Registration Systems. Inc. recorded on June 1, 2005 in document number 2005000421816

15. Mortgage Electronic Registration Systems Inc.under fraudulent assignment of Indymac Bank FSB Deed of Trust, having no interest in the promissory note, assigned such deed of trust to Deutsche Bank attached such assignment as Exhibit 6 which was cited In Trustee sale and recorded in or about May 2, 2005 in the Orange County Recorder's Office as Document Number 2005000335677.

16. Although there is no valid assignment of the Deed of Trust recorded in the Orange County Recorder's Office, Plaintiffs are informed and believes that Indymac FSB assigned its interest in the Deed of Trust to an unknown entity. That it no longer has an interest in the Deed of Trust or the promissory note secured thereby.

17. MERS was never a party to the transaction, or entitled to payment from Plaintiffs.

18. Plaintiffs are informed and believes that MERS is not a nominee under the Deed of Trust and fraudulently assigned Deed of Trust to Deutsche Bank and, that MERS never had any interest in the Deed of Trust or the promissory note secured thereby.

19. One West Bank's fraudulent claim under the Deed of Trust is entirely unsecured and there is no security that attaches to the Deed of Trust.

20. In this case, foreclosure has been filed, the entity filing the foreclosure has no pecuniary in the mortgage loan. The foreclosing entity is a third party. The entity lacks standing and the capacity to foreclose. The entity has no first hand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan. The entity has no legal authority to draft mortgage assignments relating to the loan. The foreclosing entity and its agents

regularly commit perjury in relation to their testimony.

21.   Indymac Bank FSB "Lender", on the original Promissory Note was not the lender. The originators of the loan immediately and simultaneously secured the note. The beneficial interest in the note was never in the lender.  In this case, MERS, acting as nominee for Indymac under the assignment of Deed of Trust, was never intended to be the assignee of the mortgage loan.  The Servicer, like Onewest Bank, or some party has or is about to declare the default, is not in privity with the lender.  The true owner or beneficiary of the mortgage loan has not declared a default and usually no longer has an interest in the note.

22.   The obligations reflected by the note allegedly secured by assignment of Deed of Trust to MERS have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligation on which to base any foreclosure on the property owned by Plaintiffs.  Defendants have and continued to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Plaintiffs when they do not have lawful rights to foreclose, are not holders in due course of the notes.

23.   The mortgage loan assigned to MERS as nominee, is at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holders in due course and beneficial owners of the original Promissory Note.

24.   Certain individuals who were the employees of the Servicer, Onewest Bank, and even the employees of the law firm executed and notarized forged documents as to the ownership of the loan.  The affiants have committed counts of fraud, perjury, and

forgery of the mortgage loan.

25. Defendant Deutsche Bank, represented itself as a "Trust" coming to Court are actually Mortgage Back Securities ("MBS"). The Servicers, like Onewest, are merely administrative entities which collect mortgage payments and escrow funds. The MBS have signed themselves up under oath with the Security Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-through" entities wherein they can never own the mortgage loan assets in the MBS. This allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as MBS is a qualified REMIC, no income tax will be charged to the MBS.

26. Importantly, Deutsche Bank as "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the MBS in the year MBS "closed." Every mortgage in the MBS should have been publicly recorded in Orange County where the property is located with a mortgage in the name of "Residential Asset Securitization Trust 2007-AR21, Mortgage Pass-through Certificates, Series 2007-AR21 under the pooling and servicing agreement dated October 1, 2007." Such mortgage would have had been publicly recorded in the year 2007.

27. The "Trusts" were never registered as Trusts. The promissory note was never obtained and the mortgages never obtained or recorded.

28. In this scenario, even if the foreclosing entity produces a copy of the note, or even an alleged original, the mortgage loan was not conveyed into the trust under the requirements of the prospectus for the trust or the REMIC requirements of the IRS.

29.   Consequentially, the end result would be that the required MBS asset, or any part thereof (mortgage note or security interest), would not have been legally transferred to the trust to allow the trust to ever even be considered a "holder" of a mortgage loan.  Neither the "Trust" or the Servicer, Onewest Bank, would ever be entitled to bring a foreclosure or declaratory action.  The Trust will never have standing or be a real party in interest before this Court as an holder of title to the property.

30.   The transfer of mortgage loans into the Trust in which Deutsche Bank is the Trustee after the "cut-off date" (in this case 2007), destroys the trust's REMIC tax exempt status, and this trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at of one hundred percent (100%).

31.   Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred into a REMIC after that REMIC's "cut off" and "closing dates."

32.   Therefore, the lack of acquisition of Plaintiffs' mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements..

33.   Plaintiffs signed a Promissory Note and Mortgage, they were unknowingly converting their property into an asset of a MBS.  Plaintiffs were never informed of the nature of the scheme.  They were deliberately induced into signing a Negotiable Instrument which was never intended as such, but as intended as collateral for a MBS.

34.   The fact that this loan was meant to fund a MBS was a "Material disclosure" which was deliberately intentionally undisclosed.  The failure to disclose the identity of the true lender at closing was also a "material disclosure"; the nature of which would

make the contract voidable under California contract law.

35.   As required by SEC, this MBS/Trust has a Pooling and Servicing Agreement ("PSA") which dated October 1, 2007 and must be publicly filed.  The only purpose for the PSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the MBS.  The investors who put up money for the MBS and who received the MBS certificates or Bonds, are not parties to the PSA.

36.   The PSA merely sets forth what happens after the mortgages are bundled together. However, the PSA also sets forth a *Cut Off Date.*  The Cut Off Date is the date on which all mortgage loans in the MBS/Trust must be identified and set out in the SEC required list of mortgage loans.

37.   Like the cut off date, this MBS/Trust had a *Closing Date.*  The Closing Date is the date that the individual identified mortgages were to be transferred through the Custodian for the benefit of the investors.  The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been transferred for the benefit of the investors. Further, proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the mortgage itself.  This MUST have occurred by the closing date.

38.   One West Bank as attorney in fact for Deutsche Bank, as MBS trustee claims to be acting on behalf of the MBS/Trust and claims that it has acquired the loan from MERS, who was not a party in deed of trust.  The multiple transfers of title of the

mortgage loan between the originator, and the MBS/Trust is simply ignored as it can never be proved or shown to the Court. Chain of Mortgage assignment is broken as CORRESPONDENT and MERS were never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS.

39. The assignment of Plaintiffs' mortgage were signed and notarized many years after the actual date of the loan and the date listed with the SEC and IRS as the "Closing" of the REMIC. In this case if found to be true, this MBS/Trust has been operating illegally as a tax exempt REMIC.

40. Here, the Note and Mortgage were severed or bifurcated when the PHH deed of trust was fraudulently assigned to MERS as nominee for Indymac. Indymac never loaned any money to the Plaintiffs. MERS was never a beneficiary under the Note. MERS purportedly held the Mortgage as "nominee" for Indymac, an assignee of fraudulently conveyed deed of trust. Since then, the only party who could authorize the mortgage assignment for a bankrupt mortgage assignees would be the Bankruptcy Trustee. In this case, MERS mortgage has been assigned on behalf of a bankruptcy entity, a criminal violation of the bankruptcy code has occurred.

41. An assignment from MERS was a legal nullity. MERS never had an interest in this fraudulently conveyed mortgage and Note.

42. MERS assigned mortgage was prepared by an agreement between the Defendants. These Defendants used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be officers of MER.

43. Defendant Deutsche Bank filed and caused to be filed MERS mortgage and assignments of mortgage in the public record and provided these false documents to

prove chain of title that does not exist to the Court as part of its Motion for Relief from Automatic Stay.

44.   Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 43, inclusive, as though set forth at length herein.

45.   Plaintiffs allege that they hold an interest in the Property free and clear of any interest of defendants as shown by the conveyance of a GRANT DEED from Pacific Sands LLC to Mark Howard Shafer a single man recorded on May 2, 2005 at 3:54pm in Document number 200500335676, in that the lien evidenced by the Deed of Trust has no value since it is wholly unsecured, and that accordingly, the Deed of Trust is null and void and the only free and clear interest in the property stems from the conveyance from Pacific Sands LLC. to Plaintiff Mark Howard Shafer, a single man.

46.   Plaintiff is informed and believes that Defendants allege that the Deed of Trust cannot be determined to be null and void because it is secured by the Property which is Plaintiff's principal residence and is not wholly unsecured.

47.   An actual controversy exists between Plaintiff and Defendants with regard to the validity, nature, and extent of their interest in the Property

48.   It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature, and extent of Defendants' interest in the Property.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   That the Court determine the nature and extent and validity of Defendants'

interest in the real property located at 20361 Newland Street Huntington Beach, CA 92646;

2. That the Court determine that the amount of the lien secured by the Indymac Bank, One West Bank, Mortgage Electronic registration Systems and Deutsche bank National Trust Company Deed of Trust is zero;

3. That the Court determine that the claim owed to Deutsche Bank or One West Bank FSB by Plaintiffs is wholly unsecured;

4. For attorney fees and costs of suit incurred herein; and

5. For such other and further relief as the court deems just and proper.

### THIRD CLAIM FOR RELIEF
[As to Defendant Deutsche Bank]
[15 U.S.C. § 1641(g)]

49.   Plaintiffs re allege and incorporate the allegations contained in paragraphs 1 through 59, inclusive, as though set forth at length herein.

50.   On or about May 17, 2010, MERS purportedly assigned the Deed of Trust to Defendant Deutsche Bank and recorded such assignment in the Orange County Recorder's Office as Document Number 2010000231819.

51.   In May 2009, "The Helping Families Save Their Homes Act of 2009" was enacted into law that calls for notice to the consumer when a "mortgage loan" is transferred or assigned. The provision was effective immediately and violations are subject to TILA liability.

52.   15 U.S.C. §1641 was amended by adding at the end the following:

"(g) NOTICE OF NEW CREDITOR –
      (1) IN GENERAL – In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold

*or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-*

    *(A) The identity, address, telephone number of the new creditor;*
    *(B) The date of the transfer;*
    *(C) How to reach an agent ort party having authority to act on behalf of the new creditor;*
    *(D) The location of the place where transfer of ownership of the debt is recorded; and*
    *(E) Any other relevant information regarding the new creditor."*.

53.     To date, Plaintiffs have not received notice as required by 15 U.S.C. §164 (g).

WHEREFORE, Plaintiff prays for judgment against Defendant Deutsche Bank as follows:

1.   Statutory damages according to proof.

2.   For attorney fees and costs of suit incurred herein; and

3.   For such other and further relief as the court deems just and proper.

### FOURTH CLAIM FOR RELIEF
[As to All Defendants]
[Fraud in Conveyance]

54.     Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 53, inclusive, as though set forth at length herein.

55.     Correspondent was a stranger to the transaction, having no relationship with Indymac Bank, FSB purportedly assigned the Deed of Trust to Mortgage Electronic Registration Systems, who assigned the Deed of trust to Wells Fargo bank Exhibit 5 which assignment of Deed of Trust was recorded in or about May 25, 2005, in the Orange County Recorder's Office as Document Number 2005000402341.

56.     These Defendants were a stranger to the transaction, having no interest in the Note or Deed of Trust, nor having any authority from either the original Lender or Plaintiffs to assign the Deed of Trust, together with the Note to anyone.

57.   MERS, a Nominee for INDYMAC purportedly received assignment of the Deed of Trust, together with note.

58.   MERS was and is a foreign corporation, having no authority to conduct business in the State of California fraudulently acted as nominee for Indymac as beneficiary under the Deed of Trust without Plaintiff's consent.

59.   Upon information and belief, Plaintiffs therefore allege that neither MERS, nor One West Bank paid any consideration for the promissory note. Assuming *arguendo* that if Deutsche Bank National Trust purchased the promissory note and paid to Mortgage Electronic Registration Systems Inc. such assignment would constitute fraudulent conveyance.

60.   Upon information and belief, Plaintiffs allege that MERS and One West Bank FSB had full knowledge of such fraudulent conveyance because they accepted the assignment and alleged endorsement of promissory note from MERS who was strangers to the transaction.

61.   Even if MERS and One West Bank FSB did not have such knowledge, their actions were reckless because simple verification of document on its face would reveal that MERS had no connection and was not a party to subject transaction.

62.   All Defendants mentioned herein participated in the fraud by processing falsified assignment of Deed of Trust.

63.   One West Bank falsely represented to Plaintiffs that they received valid assignment of Deed of Trust and enforceable endorsement of promissory note to procure payments from Plaintiffs that they were not entitled to receive.

64.   The representations made by said Defendants were in fact false. The true facts were

that MERS could not act as nominees for Indymac in receiving the assignment of Deed of Trust. In fact, MERS had no interest in the promissory note and could not assign or enforce the promissory note executed in favor of Indymac Bank FSB On or about March 9, 2010 WILLIAMS falsely represented that he is the Assistant Vice President of MERS, fraudulently executed an Assignment of Deed of Trust purportedly assigned together with the note and all rights accrued under Deed of Trust to Defendant Deutsche Bank.

65.     When Defendant WILLIAMS made their representations, she knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs to induce them to act in reliance on these representations in the manner herein alleged with the expectation that Plaintiffs would so act.

66.     Plaintiffs, at the time these representations were made by Defendants and at the time Plaintiffs took the actions alleged herein, was ignorant of the falsity of the Defendants' representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to make payments to these Defendants when they were not entitled to such money.

67.     The aforementioned conducts of the Defendants were intentional misrepresentation, deceit, or concealment of material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving the Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## FIFTH CLAIM FOR RELIEF

[As to All Defendants and All Persons Claiming by, Through, or Under Such Person, All

Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, or
Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title Thereto
and DOES 1-150]
[LIBEL]

68.  Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through
67, inclusive, as though set forth at length herein.

69.  The conduct of Defendants constitute libel that tends to defame, disparage, and
injure Plaintiffs in their business and reputation and has also caused pain and
suffering.

70.  Such libel has occurred on a continuing basis from approximately March 11, 2010
upon publication of the NOTICE OF DEFAULT through the present.

71.  As a result of Defendants' acts and omissions, Plaintiffs have been injured in an
amount yet to be ascertained.

72.  The conduct of these Defendants as alleged herein was willful, fraudulent,
malicious, and oppressive.  As a result, Plaintiffs request an award of punitive
damages.

SIXTH CLAIM FOR RELIEF
[As to One West Bank and All Persons Claiming by, Through, or Under Such Person, All
Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, or
Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title Thereto
and DOES 1-150]
[QUIET TITLE]

73.  Plaintiffs re-allege and incorporate the allegatiosn contained in paragraphs 1 through
72, inclusive, as though set forth at length herein.

74.  Plaintiffs are the owner of the 20361 Newland Street Huntington Beach, CA real
property now held by the Plaintiffs' estate.

75.  The basis of Plaintiffs' title is a deed granting the above-described property in fee

-16-

simple to Plaintiffs.

76.    Plaintiffs are informed and believe and on such information and belief allege that all named Defendants and DOES 1-150 and all persons claiming, by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the Complaint adverse to Plaintiffs' title thereto, claim an interest adverse to Plaintiff in the above-described property as adverse interest the holder of a deed of trust against the subject property.  The deed of trust was recorded on May 2 2005 in the Official Records of the County of Orange, as document number 2005000335676 Some of the Defendants including Deutsche Bank, MERS and unknown defendants, specifically those additionally designated as DOES 1-150, inclusive claim interests in the property adverse to Plaintiffs as assignees and successors of Defendants.

77.    Plaintiffs are seeking to quiet title as of a date to be determined.

WHEREFORE, Plaintiffs pray for judgment on their Third through Sixth claims as follows:

    1.  General Damages in the sum of $1,000,000.00;

    2.  Special damages in the sum of $750,000.00;

    3.  For punitive damages in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct;

    4.  For attorney and costs; and

    5.  For attorney fees and costs of suit incurred herein; and

    6.  For such other and further relief as the court deems just and proper.

DATED: 12/1/10

Respectfully Submitted;

Kenneth A. Roberts
Attorney for Plaintiff

I verify that the foregoing Complaint has been reviewed by me; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Laguna Hills, California on  12-1 , 2010.

DATED: 12-1-2010

Mark H. Shafer
Plaintiff

EXHIBIT 1

This Document was electronically recorded by
Fidelity National Default 5

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

AZTEC FORECLOSURE CORPORATION
3300 N. Central Ave. Suite, 2200
Phoenix, AZ 85012

||||||||||||||||||||||||||||||||||||||||||| 15.00
2010000118429 04:04pm 03/11/10
66 406 N15 3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Space above this line for recorder's use only

Trustee Sale No. 10-513733INC   Title Order No. 100163240-CA-DCI

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL**
**UNDER DEED OF TRUST**

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This estimated amount is $17,921.42 as of March 11, 2010 and will increase until your account becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR21, Mortgage Pass-Through Certificates, Series 2007-AR21 under the Pooling and Servicing Agreement dated October 4, 2007, C/O Aztec Foreclosure Corporation, 3300 N. Central Ave., Suite 2200, Phoenix, AZ 85012, (602) 222-5711 or (800) 731-0850.

T.S. #: 10-513733INC     ORDER #: 100163240-CA-DCI

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT Aztec Foreclosure Corporation is the duly appointed Trustee under a Deed of Trust dated 04/22/05, executed by Mark Howard Shafer, a Single Man, as trustor to secure obligations in favor of Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank, as Beneficiary recorded on May 2, 2005 in instrument No. 2005000335877 in the Office of the Recorder of ORANGE County, California, as more fully described on said Deed of Trust. Including the note(s) for the sum of $540,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE 12/01/09 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES AND ANY DELINQUENT TAXES AND/OR INSURANCE PREMIUMS ADVANCED BY THE BENEFICIARY.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached declaration pursuant to CALIFORNIA CIVIL CODE §2923.5

DATE: 03/11/10

AZTEC FORECLOSURE CORPORATION
As Trustee, By LSI Title Company, As Agent

Marco Marquez

MARK SHAPER

## DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☐ The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

☐ the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

☐ the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

☐ the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

INDYMAC MORTGAGE SERVICING

Date: 12/4/2009                 By: _____
                                     Katherine Brackins

Loan Number:        1005597115
File Number:        10-513733INC

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS PRACTICES ACT,
### 15 USC 1692, ET SEQ.

The following information is provided as required by the Federal Fair Debt Collections Practices Act:

1.      As of March 9, 2010 our client has advised that the amount of the debt is $556,767.64.

2.      The creditor to whom the debt is owed is: OneWest Bank, FSB.

3.      The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter. If you do not dispute the debt within this period, it will be assumed to be valid by this office. The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, our client OneWest Bank, FSB. If you choose to dispute the debt, or any portion thereof, you must notify us within thirty (30) days of the date you receive this letter.

4.      If you notify us in writing within (30) days of the date you receive this letter that you are disputing the debt or any portion thereof, or if you notify us in writing within thirty (30) days of the date you receive this letter that you want to know the name of the original creditor if that creditor is different from our client, OneWest Bank, FSB, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

5.      The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this letter before initiating foreclosure proceedings to foreclose your deed of trust. In the event we do initiate foreclosure proceedings to foreclose your deed of trust, within thirty (30) days from the date you receive this letter, you will still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client OneWest Bank, FSB.

6.      If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose the deed of trust on your property, even if we have already initiated the foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name of the original creditor.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, call 1(800)731-0850, or write to the Fair Debt Clerk at the address provided below.

Any written request should be addressed to:

        Attention: Fair Debt Dept
        Aztec Foreclosure Corporation
        3300 N. Central #2200
        Phoenix, AZ 85012

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Please be advised that if your personal liability for this debt has been modified or extinguished by a discharge in bankruptcy, this Notice is provided solely to foreclose the deed of trust remaining on your property and is not an attempt to collect the discharged personal obligation.

EXHIBIT 2

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Christopher J. Hoo 256166<br>Randall S. Miller & Associates, P.C.<br>15165 Ventura Blvd., Suite 330<br>Sherman Oaks, CA 91403<br>(818)574-3139<br><br>☐ Individual appearing without counsel<br>☒ Attorney for: OneWest Bank, FSB | |

<div align="center">

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

</div>

| In re:<br><br>Mark H. Shafer<br><br><div align="right">Debtor(s).</div> | CHAPTER: 7<br><br>CASE NO.: 10-22011<br><br>DATE: 10/19/10<br>TIME: 10:30 am<br>CTRM: 5D<br>FLOOR: 5 |
|---|---|

<div align="center">

**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
UNDER 11 U.S.C. § 362 (with supporting declarations)
(MOVANT:  OneWest Bank, FSB                    )
(Real Property)**

</div>

1.  NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2.  Hearing Location:     ☐ 255 East Temple Street, Los Angeles          ☒ 411 West Fourth Street, Santa Ana

    ☐ 21041 Burbank Boulevard, Woodland Hills     ☐ 1415 State Street, Santa Barbara

    ☐ 3420 Twelfth Street, Riverside

3.  a.  ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

    b.  ☐ This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

       ☐ at the hearing        ☐ at least _____ court days before the hearing.

       (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

       (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

       (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4.  You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response (Optional Court Form F 4001-1M.RES), or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

---

<div align="center">

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

</div>

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 2 of 11*          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|-------|---------------|------------|
| Mark H. Shafer | Debtor(s). | CASE NO.: 10-22011 |

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your
     right to oppose the Motion and may grant the requested relief.

Dated: 9/21/10

                                            Law Offices of  Randall S. Miller & Associates, PC
                                            *Print Law Firm Name (if applicable)*


  Christopher Hoo (P-256166)   /s/Christopher J. Hoo
*Print Name of Individual Movant or Attorney for Movant*          *Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*          **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 3 of 11        F 4001-1M.RP

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| Mark H. Shafer | | |
| | Debtor(s). | CASE NO.: 10-22011 |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  OneWest Bank, FSB                    )

1.  **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

   *Street Address:* 20361 Newland Street
   *Apartment/Suite No.:*
   *City, State, Zip Code:* Huntington Beach, CA 92646

   Legal description or document recording number (including county of recording):
   Orange County, Instrument Number 2005000335677
   ☐ See attached continuation page.

2.  **Case History:**
   a.  ☒ A voluntary  ☐ An involuntary  petition under Chapter  ☒ 7  ☐ 11  ☐ 12  ☐ 13
       was filed on *(specify date):* 8/27/10
   b.  ☐ An Order of Conversion to Chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13
       was entered on *(specify date):*
   c.  ☐ Plan was confirmed on *(specify date):*
   d.  ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached Declaration.

3.  **Grounds for Relief from Stay:**
   a.  ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:
       (1)  ☒ Movant's interest in the Property is not adequately protected.
           (a)  ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.
           (b)  ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
           (c)  ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).
           (d)  ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.
       (2)  ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.
           (a)  ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.
           (b)  ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.
           (c)  ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.
           (d)  ☐ Other (See attached continuation page).

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                        **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 4 of 11*    **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s) | CASE NO.: 10-22011 |

    (3) ☐ *(Chapter 12 or 13 cases only)*

        (a) ☐ Postconfirmation plan payments have not been made to the Standing Trustee.

        (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

    (4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. Evidence in Support of Motion: *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

    a. ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

    b. ☐ Other Declaration(s) are also attached in support of this Motion.

    c. ☒ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit __4__.

    d. ☐ Other evidence *(specify)*:

6. ☐ An optional Memorandum of Points and Authorities is attached to this Motion.

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. ☒ Additional provisions requested:

    a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b. ☒ That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

    c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 5 of 11*                              F 4001-1M.RP

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
| | Debtor(s). | CASE NO.:  10-22011 |

    d.  ☐  For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.


Dated: 9/21/10                                                  Respectfully submitted,

                                                         OneWest Bank, FSB
                                                          *Movant Name*

                                                        Law Offices Randall S. Miller & Associates, P.C.
                                                        *Firm Name of Attorney for Movant (if applicable)*

                                                        By: _____
                                                        *Signature*

                                                        Name:   Christopher Hoo (P-256166)   /s/Christopher J. Hoo
                                                        *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                          F 4001-1M.RP

Motion for Relief from Stay (Real Property) - Page 6 of 11          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| Mark H. Shafer | | |
| | Debtor(s). | CASE NO.: 10-22011 |

### REAL PROPERTY DECLARATION
(MOVANT:  OneWest Bank, FSB          )

I, _____ Chamagne Williams _____, declare as follows:
          *(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

   ☐ I am the Movant and owner of the Property.

   ☐ I manage the Property as the authorized agent for the Movant.

   ☒ I am employed by Movant as *(state title and capacity)*:      Assistant Vice President

   ☐ Other (specify):

2. I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. a.   The address of the Property that is the subject of this Motion is:

   Street Address:  20361 Newland Street
   Apartment/Suite No.:
   City, State, Zip Code:  Huntington Beach, CA 92646

   b.   The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit ___1____.

   ☐ See attached page.

4. Type of property *(check all applicable boxes)*:

   a.   ☒ Debtor's(s') principal residence   b.   ☒ Other single family residence

   c.   ☐ Multi-unit residential            d.   ☐ Commercial

   e.   ☐ Industrial                        f.   ☐ Vacant land

   g.   ☐ Other (specify):

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 7 of 11*                    **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE)<br><br>Debtor(s). | CHAPTER: 7<br><br>CASE NO.: 10-22011 |

5. Nature of Debtor's(s') Interest in the Property:

   a.  [x]  Sole owner

   b.  [ ]  Co-owner(s) *(specify)*:

   c.  [ ]  Lien holder *(specify)*:

   d.  [ ]  Other *(specify)*:

   e.  [x]  Debtor(s)  [x] did   [ ] did not  list the Property in the Schedules filed in this case.

   f.  [x]  Debtor(s) acquired the interest in the Property by  [ ] grant deed  [ ] quitclaim deed  [x] trust deed

       The deed was recorded on:  5/2/05

6. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $_____ | $_____ | $ 439,394.52 |
| b. | Accrued Interest: | $_____ | $_____ | $ 22,276.18 |
| c. | Late Charges: | $_____ | $_____ | $ 939.59 |
| d. | Costs (Attorney's Fees, Other Costs): | $_____ | $_____ | $ 700.00 |
| f. | Advances (Property Taxes, Insurance): | $_____ | $_____ | $ 8,223.02 |
| g. | TOTAL CLAIM as of _9/13/10_ : | $_____ | $_____ | $ 471,533.31 |

   h.  [ ] Loan is all due and payable because it matured on *(specify date)*:

7. Movant holds a  [x] , deed of trust  [ ] judgment lien  [ ] other *(specify)*
   that encumbers the Property.

   a.  A true and correct copy of the document as recorded is attached as Exhibit _1_ .

   b.  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _2_ .

   c.  [x] A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _3_ .

8. Status of Movant's claim relating to the Property *(fill in all applicable information requested below)*:

   a.  Current interest rate: 6.1250%

   b.  Contractual maturity date: 5/1/35

   c.  Amount of current monthly payment: $ 4,070.78

   d.  Number of PREPETITION payments that have come due and were not made: _9_ . Total amount: $ 36,637.02

   e.  Number of POSTPETITION payments that have come due and were not made: _1_ . Total amount: $ 4,078.78

   f.  Date of POSTPETITION default: 12/1/09

   g.  Last payment received on the following date: 11/1/09

   h.  Notice of default recorded on the following date: 3/11/10

   i.  Notice of sale recorded on the following date:

   j.  Foreclosure sale originally scheduled for the following date:

   k.  Foreclosure sale currently scheduled for the following date:

   l.  Foreclosure sale already held on the following date:

   m.  Trustee's deed on sale already recorded on the following date:

   n.  Future payments due by time of anticipated hearing date *(if applicable)*:
      An additional payment of $ _____ will come due on _____ , and on the _____ day of
      each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $ _____ will
      be charged to the loan.

9. Attached hereto as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                            **F 4001-1M.RP**

Case 8:10-bk-22011-RK   Doc 9   Filed 09/21/10   Entered 09/21/10 12:25:13   Desc
Main Document   Page 8 of 11

Motion for Relief from Stay (Real Property) - Page 8 of 11.

**F 4001-1M,RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

10. ☒  *(Chapter 7 and 11 cases only):*  The fair market value of the entire Property is $ 450,000.00 _____ , established by:

   a. ☐  Appraiser's declaration with appraisal attached herewith as Exhibit _____ .

   b. ☐  A real estate broker or other expert's declaration regarding value attached as Exhibit _____ .

   c. ☒  A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit 4 _____ .

   d. ☐  Other *(specify):* ¯

11. ☐  The fair market value of the Property is declining based on/due to: _____

12. ☒  Calculation of equity in Property:

   a.  Based upon  ☐ preliminary title report  ☒ Debtor's(s') admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor(s) (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | IndyMac | $639,394.00 | $471,533.31 |
| 2nd Deed of Trust: | IndyMac | $71,056.00 | $71,066.00 |
| 3rd Deed of Trust: | | | |
| Judgment Liens: | | | |
| Taxes: | | | |
| Other: | | | |
| **TOTAL DEBT:** $ 610,450.00 | | | |

   b.  Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit 1,4 _____ , and consists of:

      ☐ Preliminary title report

      ☒ Relevant portions of Debtor's(s') Schedules as filed in this case

      ☐ Other *(specify):*

   c.  Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $ -160,450.00 _____ (§ 362(d)(2)(A)).

   d.  The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ -92,589.31 _____ (§ 362(d)(1)).

   e.  Estimated costs of sale: $ _____ (Estimate based upon _____ % of estimated gross sales price)

13. ☐  *(Chapter 12 and 13 cases only)*  Chapter 12 or 13 case status information:

   a.  341(a) Meeting currently scheduled for (or concluded on) the following date;
Confirmation hearing currently scheduled for (or concluded on) the following date;
Plan confirmed on the following date *(if applicable):*

   b.  Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case;

| | | | |
|---|---|---|---|
| (Number of) _____ payment(s) due at $ _____ | each | = | $ _____ |
| (Number of) _____ payment(s) due at $ _____ | each | = | $ _____ |
| (Number of) _____ late charge(s) at $ _____ | each | = | $ _____ |
| (Number of) _____ late charge(s) at $ _____ | each | = | $ _____ |

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 9 of 11*.          **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s). | CASE NO.: 10-22011 |

c.   Postpetition/preconfirmation advances or other charges due but unpaid:          $ _____
     (See attachment for details of type and amount.)

**TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**   $ _____

d.   Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation (*if applicable*):

|   |   |   |   |   |   |   |
|---|---|---|---|---|---|---|
| (Number of) _____ | payment(s) due at $ _____ | = | each | = | $ | _____ |
| (Number of) _____ | payment(s) due at $ _____ | = | each | = | $ | _____ |
| (Number of) _____ | late charge(s) at  $ _____ | = | each | = | $ | _____ |
| (Number of) _____ | late charge(s) at  $ _____ | = | each | = | $ | _____ |

e.   Postconfirmation advances or other charges due but unpaid:          $ _____
     (See attachment for details of type and amount.)

**TOTAL POSTCONFIRMATION DELINQUENCY:**   $ _____

f.   ☐  The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit _____.

g.   ☐  See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan (*attach Court
     Form F 4001-1M.13*).

14. ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15. ☐  The court determined that the Property qualifies as single asset real estate on _____.  More than 90 days have
     passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as
     single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being
     confirmed within a reasonable time  or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11
     U.S.C. § 362(d)(3).

16. ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud
     Movant.

17  ☐  The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

     a.   ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval.  See
             attached continuation page for facts establishing the scheme.

     b.   ☐  Multiple bankruptcy filings affecting the Property.  The multiple bankruptcy filings include the following cases:
          1.   Case Name:
               Case Number;                          Chapter:
               Date Filed:                            Date Dismissed:                 Date Discharged:
               Relief from stay re this property     ☐  was     ☐  was not  granted.
          2.   Case Name:
               Case Number:                          Chapter:
               Date Filed:                            Date Dismissed:                 Date Discharged:
               Relief from stay re this property     ☐  was     ☐  was not  granted.
          3.   ☐  See attached continuation page for more information about other bankruptcy cases affecting the Property.

          ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder,
             and defraud creditors.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 10 of 11*                **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

18. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

   a.  ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

   b.  ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

   c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on _Sept. 16, 2010_, at _____ **Austin** _Texas_ _____ (city, state).

Chamagne Williams       Assistant Vice President
_Print Declarant's Name_                                _Signature of Declarant_

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                      **F 4001-1M.RP**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

60.00

**Recording Requested By:**
IndyMac Bank, F.S.B. c/o Document Management

2005000335677 03:54pm 05/02/05

*[Company Name]*

113 32 D11 19

0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

**And When Recorded Mail To:**
IndyMac Bank, F.S.B. c/o Document Management

*[Company Name]*

*[Name of Natural Person]*
3465 E. Foothill Blvd.

*[Street Address]*
Pasadena, CA 91107

*[City, State Zip Code]*

---

*[Space Above This Line For Recording Data]*

# DEED OF TRUST

MIN: 100055401210386340

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated      April 22, 2005
together with all Riders to this document.

(B)    "Borrower" is   Mark Howard Shafer, a single man

Borrower is the trustor under this Security Instrument.

(C)    "Lender" is   IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a          Federal Savings Bank                organized and existing under the laws of
United States of America              . Lender's address is     155 North Lake
Avenue, Pasadena, CA 91101

(D)    "Trustee" is   First American Title Insurance Co

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                            Page 1 of 13                                         14M1CA 08/00
www.compliancesource.com                                                                                        © 2000, The Compliance Source, Inc.

Public Record

(F)     "Note" means the promissory note signed by Borrower and dated     April 22, 2005     . The Note states that Borrower owes Lender     five hundred forty thousand and NO/100ths
Dollars (U.S. $ 540,000.00     )
plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     May 1, 2035

(G)     "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)     "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)     "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider       ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider            ☐ Revocable Trust Rider
☐ Other(s) [specify]

(J)     "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)     "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)     "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)     "Escrow Items" means those items that are described in Section 3.

(N)     "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)     "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)     "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)     "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Loan No: 121038634

Public Record

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____ County _____ of _____ Orange _____ :

<div align="center">[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]</div>

    See Exhibit "A" attached hereto and made a part hereof.

    APN# 151-304-36

Assessor's Identification Number:    151-304-36

which currently has the address of          20361 Newland Street

<div align="center">[Street]</div>

Huntington Beach       , California      92646        ("Property Address"):

<div align="center">[City]                  [Zip Code]</div>

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
    1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        MERS Modified Form 3005 01/01
—The COMPLIANCE SOURCE, INC.—
www.compliancesource.com

<div align="center">Page 3 of 13</div>

                                                                          14001CA 08/00
                                                                      © 2000, The Compliance Source, Inc.

Public Record

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payments or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No: 121038634

California Deed of Trust-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 4 of 13
MERS Modified Form 3005 01/01
1430CA 08/00
© 2000, The Compliance Source, Inc.

Public Record

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                      Page 9 of 13                          14301CA 08/00
www.compliancesource.com                                                                               © 2000, The Compliance Source, Inc.

Public Record

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—The Compliance Source, Inc.—                    Page 6 of 13
www.compliancesource.com

MERS Modified Form 3005 01/01
1400ICA 08/00
© 2000, The Compliance Source, Inc.

obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                      Page 7 of 13                                         1438CA  08/00
www.compliancesource.com                                                                                            © 2000, The Compliance Source, Inc.

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"):  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 8 of 13
MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

14. **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this

Loan No: 1210386534

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       MERS Modified Form 3005  01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 9 of 13                          1430ICA  08/00
www.compliancesource.com                                                          © 2000, The Compliance Source, Inc.

Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

Loan No:  121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    MERS Modified Form 3005 01/01
---THE COMPLIANCE SOURCE, INC.---                                    Page 10 of 13                                    14301CA  08/00
www.compliancesource.com                                                                                             © 2000, The Compliance Source, Inc.

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 11 of 13

MERS Modified Form 3005 01/01
14301CA 08/00
© 2002, The Compliance Source, Inc.

Public Record

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Mark Howard Shafer                -Borrower
                                  [Printed Name]

_____ (Seal)
                                  -Borrower
                                  [Printed Name]

_____ (Seal)
                                  -Borrower
                                  [Printed Name]

_____ (Seal)
                                  -Borrower
                                  [Printed Name]

[Acknowledgment on Following Page]

Loan No: 121038634
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 12 of 13                        14001CA  08/00
www.compliancesource.com                                                             © 2000, The Compliance Source, Inc

State of                                   §
County of _____                   §
                                           §
On _____, before me,
personally appeared   Mark Howard Shafer                     [name and title of officer]

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____    (Seal)


## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:
      The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____        Date: _____
           (Trustee)

Loan No: 121038634
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 13 of 13                       14301CA 08/00
www.compliancesource.com                                                                  © 2000, The Compliance Source, Inc.

Lenders Choice Title Company
3850 Royal Ave.
Simi Valley, CA 93063
Phone: (800) 803-2658



## ACKNOWLEDGEMENT

STATE OF CALIFORNIA

COUNTY OF _Orange_

On _April 23, 2005_, before me, _Teresa E. Vaughn_, Notary Public, personally appeared _Mark Howard Shafer_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(X), whose name(X) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(X) on the instrument the person(X), or the entity upon behalf of which the person(X) acted, executed the instrument.

WITNESS my hand and official seal.

_Teresa E. Vaughn_
Notary Public

TERESA E. VAUGHN
COMM # 1490940
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Commission Expires May 19, 2008

ca-ack.doc  rev.4/6/2005  Page 1 of

# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index - Rate Caps)

Loan #: 121038634                                     MIN:  100055401210386340

THIS FIXED/ADJUSTABLE RATE RIDER is made this   22nd  day of  April    2005     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to   IndyMac Bank, F.S.B., a
federally chartered savings bank

("Lender") of the same date and covering the property described in the Security Instrument and located at:
20361 Newland Street, Huntington Beach, CA 92646

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of    6.125                    %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
May      2010     , and the adjustable interest rate I will pay may change on that
day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable
interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."



MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX- Single Family                    6008
Page 1 of 4                                    Initials: _MHS_                 8/03
8480848 (0300)                    VMP Mortgage Solutions (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths                    percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment due after the first Change Date.

Loan No: 121038634

8480648 (0308)                    Page 2 of 4                    Initials: _MHS_                    6008
                                                                                                    8/03

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.  When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Loan No: 121038534

8490548 (0509)                Page 3 of 4        Initials: MHS        8008
                                                                       8/03

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
Mark Howard Shafer        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

8480548 (0309)                    Page 4 of 4                          6008
                                                                       8/03

Loan No:  121038634

Public Record

SCHEDULE "A"

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF ORANGE:

LOT 98 OF TRACT NO. 3595, IN THE CITY OF HUNTINGTON BEACH, COUNTY
OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 137,
PAGES 19 AND 20, MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 151-304-36; SOURCE OF TITLE IS DOC. NO. 2004000572224
(RECORDED 06-23-2004)

03/07/2005 11:00:38 [Elizabeth Congos]

# FIXED/ADJUSTABLE RATE NOTE
# INTEREST ONLY FIXED PERIOD

(One-Year Treasury Index (As Published In *The Wall Street Journal*)-Rate Caps)

Lender's First Choice certifies this document to be a true and correct copy.

Loan #   121038634

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

April 22, 2005                     Simi Valley                        California
[Date]                                  [City]                                 [State]

20361 Newland Street, Huntington Beach, CA 92646
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    540,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is     IndyMac Bank, F.S.B., a federally chartered savings bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.125     %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on     June,   2005     . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal, interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal If, on     May   1, 2035     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $     2,756.25          before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family      MIN: 100055401210386340

Page 1 of 5

8480510 (0305)                         VMP Mortgage Solutions (800)521-7291                  Form 8000
                                                                                                              7/2003

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHARGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of   May,   2010   and the adjustable interest rate I will pay may change on that day every 12th   month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two  and  750/1000ths percentage points (   2.750   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11..125   % or less than   2.750   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   2   percentage points from the rate of interest I have been paying for the preceding 12   months. My interest rate will never be greater than   12.125   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such

Loan No: 121038634

Form 6000
7/2003



loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Loan No: 121038634

8480610 (0300)

Form 8000

7/2005

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Mark Howard Shafer            -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower


Pay to the order of

_____          [Sign Original Only]
                    Without Recourse

Peggy LaDuke
Assistant Secretary
IndyMac Bank, F.S.B.

Loan No: 121038634

8480510 (0308)                    Page 6 of 5                    Form 8000
                                                                 7/2003

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||  $12.00
2010000234816 03:52pm 05/17/10
37 402 A02 2
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

OneWest Bank, FSB
888 E. Walnut Street
Pasadena, California 91101

Trustee Sale No. 10-0137301-INC
1008397115
Title Order No. 100169240-CA-DCI
APN: 151-404-16

Space above this line for recorder's use only

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank, as Assignor, by these presents does hereby grant, sell, convey, and transfer to Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR21, Mortgage Pass-Through Certificates, Series 2007-AR21 under the Pooling and Servicing Agreement dated October 1, 2007 all beneficial interest under that certain Deed of Trust dated 04/27/06, executed by Mark Howard Kinzler, a Single Man, as Trustor(s) to First American Title Insurance Co., as Trustee; Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank and Recorded on 05/03/06 as Instrument No. 2006000335677 of official records in the Office of the County Recorder of ORANGE County, CA together with the note(s), other obligations, and money due and to become due thereon, with interest, that are secured by the Deed of Trust described herein.

In witness whereof, the undersigned corporation has executed this Assignment of Deed of Trust by     Chennupe Williams     its     Assistant Vice President     , who is duly authorized by a resolution of its board of Directors to execute this assignment.

This assignment has an effective date of 03/09/2010

Continued on next page

T.S.#: 10-0127331 INC
100467119
TITLE ORDER #: 100163240-CA-DCI

DATED: 3/9/10

Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a
United States of America Federal Savings Bank

By _____
     Chamagne Williams
Its _____
     Assistant Vice President

State of _____ Texas

County of _____ Travis

On 3/9/10 _____ before me, _____ Anna Ramsey _____, a Notary Public in and
for said State, Personally appeared _____ Chamagne Williams _____ who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument. I certify under
PENALTY OF PERJURY under the laws of the State of _____ Texas _____ that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
          Notary

Case 8:10-bk-22001-RK Doc 94 Filed 09/27/10 Entered 09/27/10 12:25:43 Desc
Main Document Schedule Page 9 of 32

In re _____MARCEL SHAFER_____  Case No. _____
                    Debtor                                                    (If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 20301 NEWLAND STREET HUNTINGTON BEACH,CA, 92646 | Fee simple | H | 430,000.00 | 613,000.00 |
| | | | | |
| | | | | |
| | | | | |
| | | Total | $430,000.00 | |

Case 8:00-bk-22015-RK Doc 94 Filed 09/27/10 Entered 09/27/10 12:25:43 Desc
Main Document Page 21 of 62

Official Form 6D (12/07)

In re: MARK H. SHAFER,  Case No.
_____
Debtor  (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|---|
| Account Number: 7081054771-5 | | H | 2008 FIRST MORTGAGE LOAN | | X | | 539,364.00 | |
| INDYMAC/ONE WEST BANK P.O. BOX 78826 PHOENIX, AZ, 85062 | | | VALUE $  450,000 | | | | | |
| Account Number: 7081000021420 | | H | 2008 SECOND MORTGAGE LOAN | | X | | 71,036.00 | |
| INDYMAC/ONE WEST BANK P.O. BOX 78826 PHOENIX, AZ, 85062 | | | VALUE $ | | | | | |
| Account Number: | | | | | | | | |
| | | | VALUE $ | | | | | |
| | | | Subtotal (Total of this page) | | | | $610,400.00 | $0.00 |
| | | | Total (Use only on last page) | | | | $610,400.00 | $0.00 |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data) |

_0__ continuation sheets attached

Motion for Relief from Stay (Real Property) - Page 11 of 11 F 4001-1M.RP

| In re | (SHORT TITLE) | CHAPTER: 7 |
|-------|---------------|------------|
| Mark A. Shafer, | | Debtor(s). CASE NO: 10-22011 |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16130 Ventura Blvd., Suite 620
Sherman Oaks, CA 91403

A true and correct copy of the foregoing document described as **Notice of Motion and Motion for Relief from the Automatic Stay** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:
Hand Delivery

I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 9/21/10 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses indicated below:

Jeffrey I Golden - Trustee jtones@wgllp.com, jgolden@ecf.epiqsystems.com
Central District Of California (Santa Ana) ustpregion16.sa.ecf@usdoj.gov

☑ Service information continued on attached page

II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):
On 9/21/10 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Mark H Shafer                    Kenneth A Roberts
20301 Newland St                23876 5 Pointe Dr #208
Huntington Beach, CA 92646      Laguna Hills, CA 92653

☐ Service information continued on attached page

III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/21/10 | Christopher Hsu | |
|---------|-----------------|---|
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2008                                                                    F 4001-1M.RP

EXHIBIT 3

[REQUESTED BY]
Nationwide Title Clearing
[WHEN RECORDED MAIL TO]
MARK HOWARD SHAFER
20361 NEWLAND STREET
HUNTINGTON BEACH, CA 92646
(TRUSTOR)

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

2005000421816 04:18pm 06/01/05   12.00
213 110 S15 R01 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Loan: 1004459929
SUBSTITUTION OF TRUSTEE and FULL RECONVEYANCE

Whereas
MARK HOWARD SHAFER  was the original Trustor under that certain Deed
of Trust recorded on 06/23/2004  in the office of the County Recorder
of ORANGE  County, California, as Instrument Number  2004000572225
in Book  , Page

Whereas, the undersigned, as the present Beneficiary(s) under said
Deed of Trust desires to substitute a new Trustee under said Deed of
Trust in place and stead of original Trustee, now therefore, the
undersigned hereby substitutes himself (themselves) as Trustee under
said Deed of Trust and does hereby reconvey without warranty to the
persons legally entitled thereto all Estate now held by it under said
Deed of Trust.

Dated: 05/20/2005
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INDYMAC
BANK, FSB

By: _____
    SUSAN STRAATMANN     ASSISTANT VICE PRESIDENT

STATE OF FLORIDA  COUNTY OF PINELLAS
On   05/20/2005  before me, MARY JO MCGOWAN (#DD0236404) , Notary
Public, personally appeared   SUSAN STRAATMANN , personally known to
me (or proved to me on the basis of satisfactory evidence) to be the
person whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature on the instrument
the person, or entity upon behalf of which the person acted, executed
the same. WITNESS MY hand and official seal.

                                        * * * * * * * * * * * * * *

_____
MARY JO MCGOWAN  (#DD0236404)
Notary Public/Commission expires 07/30/2007

MARY JO MCGOWAN
Notary Public State of Florida
My Commission Exp. July 30, 2007
No. DD 0236404
Bonded through (800) 432-4254
Florida Notary Assn. Inc.

Prepared By:
J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

TMBRC 3682217     NAC419724   10005540

RCI

EXHIBIT 4

WHEN RECORDED MAIL TO:

*Lenders First Choice*

**This Document was electronically recorded by Financial Title Company**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

THIS SPACE FOR RECORDER'S USE ONLY
26.00
2005000335676 03:54pm 05/02/05

113 32 G02 1
112 48 112.47 0.00 20.00 0.00 0.00 0.00 0.00

GRANT DEED *No Consideration*

APN: 151-304-36

The undersigned grantor(s) declare(s):
Documentary transfer tax is $ 224.96 and is
(x) computed on the consideration or value of property conveyed;
Computed on Full Value of interest conveyed $ 204,255.00 R & T 11911
City of Huntington Beach

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Pacific Sands LLC. a California limited liability company, as successor in interest to Pacific Sands, A Partnership, does hereby GRANT AND CONVEY to Mark Howard Shafer, a single man, the real property in the County of Orange described as:

Lot 98 Tract 3595, City of Huntington Beach, County of Orange, State of California, as per map recorded in Book 137, Page(s) 19-20 of Miscellaneous Maps, in the office of the County Recorder of said county.

This Grant Deed is being recorded to terminate the Leasehold Estate created by that document recorded July 13, 1981 in Book 5783 Page 659 of official records. The Grantor and Grantee shown above are the successors in interest to the Lessor and Lessee as set forth in said lease.

PACIFIC SANDS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

Dated: April 28, 2005                     By: *[signature]*
                                          Allen M. Brock

                                          Its: Manager

State of California      )
                         ) ss
County of Los Angeles    )

On April 28, 2005 before me, Victor L. Moon, Notary Public, in and for County and State, personally appeared Allen M. Brock, personally known to me or proved by satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature *[signature]*

MAIL TAX STATEMENTS TO:
Same as Above

Item #1194

VICTOR L. MOON
COMM. #1428930
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. July 5, 2007

GROUND LESSOR OF TRACTS - 3595, 3977, 4094, 4114, 4409 & 4649
in HUNTINGTON BEACH, CALIFORNIA

EXHIBIT 5

Recording Requested By:
AMERICA'S SERVICING COMPANY

When Recorded Return To:
Current Trustor:
MARK SHAFER
20361 NEWLAND STREET
HUNTINGTON BEACH, CA 92646

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

6.00

2005000402341 11:17am 05/25/05

211 130 S15 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

## SUBSTITUTION OF TRUSTEE

America's Servicing Company #:1205068611 "SHAFER"   Lender ID:526001/401793159   Orange, California
MERS #: 100055400038721167   VRU #: 1-888-679-6377

WHEREAS, the undersigned is the present Beneficiary under the Deed of Trust described below as follows:
Original Trustor : MARK HOWARD SHAFER, A SINGLE MAN Original Beneficiary: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR INDYMAC BANK, F.S.B.| A FEDERALLY
CHARTERED SAVINGS BANK Dated: 06/21/2004 Recorded: 06/23/2004 In Book/Reel/Liber: N/A Page/Folio: N/A
as Instrument No.: 2004000572224 in the County of Orange and State of California.

AND WHEREAS , the undersigned desires to substitute a different Trustee for the purpose of reconveying said Deed
of TRUST; NOW THEREFORE the undersigned hereby substitutes WELLS FARGO BANK, N.A. as Trustee under
said Deed of Trust.

On May 19th, 2005
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

DARNETTA HARRIS, Assistant Secretary

STATE OF California
COUNTY OF San Bernardino

On May 19th, 2005, before me, TAMMY STURGIS, a Notary Public in and for San Bernardino in the State of
California, personally appeared DARNETTA HARRIS, Assistant Secretary, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted;
executed the instrument.

WITNESS my hand and official seal,

TAMMY STURGIS
Notary Expires: 12/16/2007   #1456797

TAMMY STURGIS
Comm. #1456797
NOTARY PUBLIC - CALIFORNIA
San Bernardino County
My Comm. Expires Dec. 16, 2007

(This area for notarial seal)

Prepared By:  Esther Ruiz (106), AMERICA'S SERVICING COMPANY 4185 HALLMARK PARKWAY, MAC # X0702-013, SAN
BERNARDINO, CA 92407

*GR1*GR1WFMF*05/19/2005 09:10:37 AM*WFMF03WFMB00000000000000000657727* CAORANG* 1205068611 CASTATE_TRUST_SUB *ER1*ER1WFMF*

EXHIBIT 6

203

WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3300 N. Central Ave. Suite. 2200
Phoenix, AZ 85012

Space above this line for recorder's use only

Trustee Sale No: 10-513733 INC.
Title Order No. 100163240-CA-DCI
APN 151-304-36

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 04/22/05.
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY
BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF
THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

On 06/30/10 at 12:00 p.m., Aztec Foreclosure Corporation as the duly appointed
Trustee under and pursuant to Deed of Trust Recorded on 05/02/05 in Instrument No.
2005000335677 of official records in the Office of the Recorder of ORANGE
County, California, executed by: Mark Howard Shafer, a Single Man, as Trustor,
Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage
Trust 2007-AR21, Mortgage Pass-Through Certificates, Series 2007-AR21 under the
Pooling and Servicing Agreement dated October 1, 2007, as Beneficiary, WILL SELL
AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale
in lawful money of the United States, by cash, a cashier's check drawn by a state or
national bank, a check drawn by a state or federal credit union, or a check drawn by a
state or federal savings and loan association, savings association, or savings bank
specified in section 5102 of the Financial Code and authorized to do business in this
state), at the north front entrance to the County Courthouse, 700 Civic Center Drive
West, Santa Ana, CA, all right, title and interest conveyed to and now held by it under
said Deed of Trust in the property situated in said County, California described as:
20361 NEWLAND STREET, HUNTINGTON BEACH, CA 92646

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street
address and other common designation, if any, shown herein. Said sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed

I 37AL
121 p 38634

1   Ken Roberts Esq. CSB 62536
2   THE LAW OFFICES OF KENNETH A. ROBERTS
    AND ASSOCIATES
3   575 Anton Blvd. # 300
    Costa Mesa, CA 92626
4   Tel:   (714) 432-6480
5   Fax:   (714) 593-3795

6   Attorney for Plaintiff,

RECEIVED BY LEGAL DEPARTMENT

DEC - 8 2010

DEUTSCHE BANK AG NY BRANCH

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

228.00

2010000646319 8:27 am 12/02/10
90 413 N25   75
0.00 0.00 0.00 0.00 222.00 0.00 0.00 0.00

CONFORMED COPY

## Superior Court for the State of California

### County of Orange Central Justice Center

15  Mark Shafer an individual

16              Plaintiffs,

17  vs.

18

19  Indymac Bank FSB, One West Bank
20  FSB, Deutsche Bank, Aztec
    Foreclosure Corporation,
21  Mortgage Electronic
    Registration System Inc. and
22  Does 1-150
                Defendants

Case No.:   30-2010-00429212

Notice of Pendency of Action

25  **Notice is given that the above-entitled action was filed**
26  **in the above-entitled court on December 1, 2010 by**
    **Mark Shafer, plaintiff, against Indymac Bank FSB, One West Bank**
27  **FSB, Deutsche Bank, Aztec Foreclosure Corp., Mortgage Electronic**
    **Registrations Systems, DOES 1-150, defendants. The action affects**
28  **title to specific real property identified in the**
    **Complaint.** (see exhibit A)

Notice of Pendency of Action

DEC 0 9 2010

The specific real property affected by the action is located in Orange County, California, and is described as follows:

LOT 98 OF TRACT 3595, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 137, PAGES 19 THROUGH 20, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. PARCEL NUMBER: APN 151-304-36.

Dated December 1, 2010.

Kenneth A. Roberts,
Attorney of Record for Plaintiff

Notice of Pendency of Action

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 01 2010

ALAN CARLSON, Clerk of the Court

BY: J. TRAN, DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Indymac Bank FSB,One West Bank FSB,Deutsche Bank,Aztec Foreclosure Corp.,Mortgage Electronic Registrations Systems,Does 1-150

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Mark Shafer an Individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California
Central Justice Center 700 Civic Center Drive West Santa Ana, CA 92701

CASE NUMBER:
*(Número del Caso)*
30-2010
00429212

JUDGE SHEILA FELL
DEPT. C22

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Ken Roberts and Associates SBN 62536 575 Anton Blvd #300 Costa Mesa, CA 92626

DATE: DEC 01 2010 ALAN CARLSON   Clerk, by   JOSEPH TRAN   , Deputy
*(Fecha)*   *(Secretario)*   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

*Exhibit A*

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
The Law Offices of Ken Roberts and Associates
Ken Roberts SBN 62536
575 Anton Blvd. #300
Costa Mesa, CA 92626
TELEPHONE NO.: 714-432-6480    FAX NO.: 714-593-3795
ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, CA 92704
BRANCH NAME: Central Justice Center

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 01 2010

ALAN CARLSON, Clerk of the Court

BY: _____ TRAN _____ DEPUTY

CASE NAME:
Mark Shafer v. Indymac bank FSB, One West Bank, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 30-2010 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter | [ ] Joinder | 0 0 4 2 9 2 1 2 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: JUDGE SHEILA FELL DEPT. C22 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

   **Auto Tort**
   [ ] Auto (22)
   [ ] Uninsured motorist (46)

   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   [ ] Asbestos (04)
   [ ] Product liability (24)
   [ ] Medical malpractice (45)
   [ ] Other PI/PD/WD (23)

   **Non-PI/PD/WD (Other) Tort**
   [ ] Business tort/unfair business practice (07)
   [ ] Civil rights (08)
   [ ] Defamation (13)
   [ ] Fraud (16)
   [ ] Intellectual property (19)
   [ ] Professional negligence (25)
   [ ] Other non-PI/PD/WD tort (35)

   **Employment**
   [ ] Wrongful termination (36)
   [ ] Other employment (15)

   **Contract**
   [ ] Breach of contract/warranty (06)
   [ ] Rule 3.740 collections (09)
   [ ] Other collections (09)
   [ ] Insurance coverage (18)
   [ ] Other contract (37)

   **Real Property**
   [ ] Eminent domain/Inverse condemnation (14)
   [ ] Wrongful eviction (33)
   [✓] Other real property (26)

   **Unlawful Detainer**
   [ ] Commercial (31)
   [ ] Residential (32)
   [ ] Drugs (38)

   **Judicial Review**
   [ ] Asset forfeiture (05)
   [ ] Petition re: arbitration award (11)
   [ ] Writ of mandate (02)
   [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   [ ] Antitrust/Trade regulation (03)
   [ ] Construction defect (10)
   [ ] Mass tort (40)
   [ ] Securities litigation (28)
   [ ] Environmental/Toxic tort (30)
   [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

   **Enforcement of Judgment**
   [ ] Enforcement of judgment (20)

   **Miscellaneous Civil Complaint**
   [ ] RICO (27)
   [ ] Other complaint *(not specified above)* (42)

   **Miscellaneous Civil Petition**
   [ ] Partnership and corporate governance (21)
   [ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* 4
5. This case [ ] is   [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12-1-2010
Mark H. Shafer
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

LAW OFFICES OF KEN ROBERTS AND ASSOCIATES
KEN ROBERTS, Esq. (SBN 62536)
575 Anton Blvd #300
Costa Mesa, CA 92626
Tel: (714) 432-6480
Fax: (714)593-3795

Attorney for Plaintiff

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 01 2010

ALAN CARLSON, Clerk of the Court

BY: _____ L. TRAN _____ DEPUTY

### Superior Court of California County of Orange
Central Justice Center

Mark Shafer an individual

        Plaintiffs,

vs.

Indymac Bank FSB, One West Bank FSB, Deutsche Bank, Aztec Foreclosure Corporation, Mortgage Electronic Registration System Inc. and Does 1-150

        Defendants

Case No.:
30-2010
0 0 4 2 9 2 1 2

**COMPLAINT TO DETERMINE THE NATURE, EXTENT, AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TITLE, AND INJUNCTIVE RELIEF.**

**JUDGE SHEILA FELL**
**DEPT. C22**

COMES NOW plaintiff Mark H. Shafer herein, ("Plaintiff"), respectfully alleges the following:

1.    Plaintiff is an individual who at all times has resided in the State of California.

2.    Plaintiff is bringing this action under the applicable laws of the State of California and the United States of America.

3.    Plaintiffs is and at all times mentioned herein is the owner and purchaser of real property located at 20361 Newland Street Huntington Beach, CA 92646 (hereinafter referred to as "SUBJECT PROPERTY" and more particularly described as:

        LOT 98 OF TRACT 3595, IN THE CITY OF HUNTINGTON BEACH,

-1-

COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 137, PAGES 19 THROUGH 20, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. PARCEL NUMBER: APN 151-304-36.

4.  Plaintiff is informed and believes that defendant ONE WEST BANK FSB is an unknown entity doing business in California, Indymac Bank FSB is an unknown entity, Aztec Foreclosure Corporation is an entity that is incorporated in California, Mortgage Electronic Registration System Inc. is a Delaware corporation illegally doing business in California.

5.  Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, and therefore sue this Defendant by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

6.  The Defendants herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title hereto" (hereinafter referred to as "the unknown defendants") are unknown to Plaintiffs. These unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title; and their claims, and each of them, constitute a cloud on Plaintiff's title to that

-2-

property.

7.   The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 1 through 100 inclusive, were the agents and/or employee of the named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

8.   The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 51 through 100 inclusive, were the agents and/or employee named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

9.   The Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, Defendants DOES 101 through 150 inclusive, were the agents and/or employee of named Defendants and in doing the things herein alleged were acting within the course and scope of such agency and/or employment and with the permission and consent of their co-defendants.

10.   Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 150, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these ficitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

11.     On or about March 11, 2010 AZTEC FORECLOSURE CORPORATION filed a

Notice of Default, asserting a claim against Plaintiffs in the sum of $17,621.42, and

further asserting that said claim is secured by a lien against real property belonging

to Plaintiffs located at 20361 Newland Street Huntington Beach, CA 92646

Attached as Exhibit 1 which is Plaintiffs' residence (hereinafter "the Property").

Attached as exhibit 2 to the Motion for Relief from Automatic Stay was a copy of a

deed of trust in the amount of $540,000 in favor of Lender, Indymac Bank FSB, a

federally chartered savings bank which deed of trust was recorded in or about May

2, 2005 in the Orange County Recorder's Office as Document Number

2005000335677.

12.     Although there was purported assignment of the Indymac Bank FSB, a federally

chartered savings bank Deed of Trust recorded in the Orange County Recorder's

Office, Plaintiff is informed and believes that such assignment was not done by

Indymac Bank FSB, a federally chartered savings bank but fraudulently conveyed.

To Mortgage Electronic Registration Systems, Inc. attached as Exhibit 3 to

Mortgage Electronic Registration Systems, Inc.

13.     Correspondent was a stranger to the transaction, having no relationship with

Indymac Bank, FSB purportedly assigned the Deed of Trust to Mortgage Electronic

Registration Systems, who assigned the Deed of trust to Wells Fargo bank Exhibit 5

which assignment of Deed of Trust was recorded in or about May 25, 2005, in the

Orange County Recorder's Office as Document Number 2005000402341.

14.     Then the stranger to the transaction Mortgage Electronic Registration Systems

without mention of Wells Fargo Bank transferred the interest in the property from

-4-

Mortgage Electronic Registration, Inc. back to Mortgage Electronic Registration Systems. Inc. recorded on June 1, 2005 in document number 2005000421816

15.    Mortgage Electronic Registration Systems Inc.under fraudulent assignment of Indymac Bank FSB Deed of Trust, having no interest in the promissory note, assigned such deed of trust to Deutsche Bank  attached such assignment as Exhibit 6 which was cited in Trustee sale and  recorded in or about May 2, 2005 in the Orange County Recorder's Office as Document Number 2005000335677.

16.    Although there is no valid assignment of the Deed of Trust recorded in the Orange County Recorder's Office, Plaintiffs are informed and believes that Indymac FSB assigned its interest in the Deed of Trust to an unknown entity. That it no longer has an interest in the Deed of Trust or the promissory note secured thereby.

17.    MERS was never a party to the transaction, or entitled to payment from Plaintiffs.

18.    Plaintiffs are informed and believes that MERS is not a nominee under the Deed of Trust and fraudulently assigned Deed of Trust to Deutsche Bank and, that MERS never had any interest in the Deed of Trust or the promissory note secured thereby.

19.    One West Bank's fraudulent claim under the Deed of Trust is entirely unsecured and there is no security that attaches to the Deed of Trust.

20.    In this case, foreclosure has been filed, the entity filing the foreclosure has no pecuniary in the mortgage loan. The foreclosing entity is a third party. The entity lacks standing and the capacity to foreclose. The entity has no first hand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan. The entity has no legal authority to draft mortgage assignments relating to the loan. The foreclosing entity and its agents

regularly commit perjury in relation to their testimony.

21.     Indymac Bank FSB "Lender", on the original Promissory Note was not the lender. The originators of the loan immediately and simultaneously secured the note. The beneficial interest in the note was never in the lender. In this case, MERS, acting as nominee for Indymac under the assignment of Deed of Trust, was never intended to be the assignee of the mortgage loan. The Servicer, like Onewest Bank, or some party has or is about to declare the default, is not in privity with the lender. The true owner or beneficiary of the mortgage loan has not declared a default and usually no longer has an interest in the note.

22.     The obligations reflected by the note allegedly secured by assignment of Deed of Trust to MERS have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligation on which to base any foreclosure on the property owned by Plaintiffs. Defendants have and continued to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Plaintiffs when they do not have lawful rights to foreclose, are not holders in due course of the notes.

23.     The mortgage loan assigned to MERS as nominee, is at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holders in due course and beneficial owners of the original Promissory Note.

24.     Certain individuals who were the employees of the Servicer, Onewest Bank, and even the employees of the law firm executed and notarized forged documents as to the ownership of the loan. The affiants have committed counts of fraud, perjury, and

forgery of the mortgage loan.

25.   Defendant Deutsche Bank, represented itself as a "Trust" coming to Court are actually Mortgage Back Securities ("MBS"). The Servicers, like Onewest, are merely administrative entities which collect mortgage payments and escrow funds. The MBS have signed themselves up under oath with the Security Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-through" entities wherein they can never own the mortgage loan assets in the MBS. This allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as MBS is a qualified REMIC, no income tax will be charged to the MBS.

26.   Importantly, Deutsche Bank as "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the MBS in the year MBS "closed." Every mortgage in the MBS should have been publicly recorded in Orange County where the property is located with a mortgage in the name of "Residential Asset Securitization Trust 2007-AR21, Mortgage Pass-through Certificates, Series 2007-AR21 under the pooling and servicing agreement dated October 1, 2007." Such mortgage would have had been publicly recorded in the year 2007.

27.   The "Trusts" were never registered as Trusts. The promissory note was never obtained and the mortgages never obtained or recorded.

28.   In this scenario, even if the foreclosing entity produces a copy of the note, or even an alleged original, the mortgage loan was not conveyed into the trust under the requirements of the prospectus for the trust or the REMIC requirements of the IRS.

-7-

29.   Consequentially, the end result would be that the required MBS asset, or any part thereof (mortgage note or security interest), would not have been legally transferred to the trust to allow the trust to ever even be considered a "holder" of a mortgage loan. Neither the "Trust" or the Servicer, Onewest Bank, would ever be entitled to bring a foreclosure or declaratory action. The Trust will never have standing or be a real party in interest before this Court as an holder of title to the property.

30.   The transfer of mortgage loans into the Trust in which Deutsche Bank is the Trustee after the "cut-off date" (in this case 2007), destroys the trust's REMIC tax exempt status, and this trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at of one hundred percent (100%).

31.   Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred into a REMIC after that REMIC's "cut off" and "closing dates."

32.   Therefore, the lack of acquisition of Plaintiffs' mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements..

33.   Plaintiffs signed a Promissory Note and Mortgage, they were unknowingly converting their property into an asset of a MBS. Plaintiffs were never informed of the nature of the scheme. They were deliberately induced into signing a Negotiable Instrument which was never intended as such, but as intended as collateral for a MBS.

34.   The fact that this loan was meant to fund a MBS was a "Material disclosure" which was deliberately intentionally undisclosed. The failure to disclose the identity of the true lender at closing was also a "material disclosure"; the nature of which would

make the contract voidable under California contract law.

35. As required by SEC, this MBS/Trust has a Pooling and Servicing Agreement ("PSA") which dated October 1, 2007 and must be publicly filed. The only purpose for the PSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the MBS. The investors who put up money for the MBS and who received the MBS certificates or Bonds, are not parties to the PSA.

36. The PSA merely sets forth what happens after the mortgages are bundled together. However, the PSA also sets forth a *Cut Off Date*. The Cut Off Date is the date on which all mortgage loans in the MBS/Trust must be identified and set out in the SEC required list of mortgage loans.

37. Like the cut off date, this MBS/Trust had a *Closing Date*. The Closing Date is the date that the individual identified mortgages were to be transferred through the Custodian for the benefit of the investors. The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been transferred for the benefit of the investors. Further, proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the mortgage itself. This MUST have occurred by the closing date.

38. One West Bank as attorney in fact for Deutsche Bank, as MBS trustee claims to be acting on behalf of the MBS/Trust and claims that it has acquired the loan from MERS, who was not a party in deed of trust. The multiple transfers of title of the

-9-

mortgage loan between the originator, and the MBS/Trust is simply ignored as it can never be proved or shown to the Court. Chain of Mortgage assignment is broken as CORRESPONDENT and MERS were never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS.

39. The assignment of Plaintiffs' mortgage were signed and notarized many years after the actual date of the loan and the date listed with the SEC and IRS as the "Closing" of the REMIC. In this case if found to be true, this MBS/Trust has been operating illegally as a tax exempt REMIC.

40. Here, the Note and Mortgage were severed or bifurcated when the PHH deed of trust was fraudulently assigned to MERS as nominee for Indymac. Indymac never loaned any money to the Plaintiffs. MERS was never a beneficiary under the Note. MERS purportedly held the Mortgage as "nominee" for Indymac, an assignee of fraudulently conveyed deed of trust. Since then, the only party who could authorize the mortgage assignment for a bankrupt mortgage assignees would be the Bankruptcy Trustee. In this case, MERS mortgage has been assigned on behalf of a bankruptcy entity, a criminal violation of the bankruptcy code has occurred.

41. An assignment from MERS was a legal nullity. MERS never had an interest in this fraudulently conveyed mortgage and Note.

42. MERS assigned mortgage was prepared by an agreement between the Defendants. These Defendants used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be officers of MER.

43. Defendant Deutsche Bank filed and caused to be filed MERS mortgage and assignments of mortgage in the public record and provided these false documents to

prove chain of title that does not exist to the Court as part of its Motion for Relief from Automatic Stay.

44.   Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 43, inclusive, as though set forth at length herein.

45.   Plaintiffs allege that they hold an interest in the Property free and clear of any interest of defendants as shown by the conveyance of a GRANT DEED from Pacific Sands LLC to Mark Howard Shafer a single man recorded on May 2, 2005 at 3:54pm in Document number 200500335676, in that the lien evidenced by the Deed of Trust has no value since it is wholly unsecured, and that accordingly, the Deed of Trust is null and void and the only free and clear interest in the property stems from the conveyance from Pacific Sands LLC. to Plaintiff Mark Howard Shafer, a single man.

46.   Plaintiff is informed and believes that Defendants allege that the Deed of Trust cannot be determined to be null and void because it is secured by the Property which is Plaintiff's principal residence and is not wholly unsecured.

47.   An actual controversy exists between Plaintiff and Defendants with regard to the validity, nature, and extent of their interest in the Property.

48.   It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature, and extent of Defendants' interest in the Property.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

   1. That the Court determine the nature and extent and validity of Defendants'

-11-

interest in the real property located at 20361 Newland Street Huntington Beach, CA 92646;

2. That the Court determine that the amount of the lien secured by the Indymac Bank, One West Bank, Mortgage Electronic registration Systems and Deutsche bank National Trust Company Deed of Trust is zero;

3. That the Court determine that the claim owed to Deutsche Bank or One West Bank FSB by Plaintiffs is wholly unsecured;

4. For attorney fees and costs of suit incurred herein; and

5. For such other and further relief as the court deems just and proper.

### THIRD CLAIM FOR RELIEF
### [As to Defendant Deutsche Bank]
### [15 U.S.C. § 1641(g)]

49. Plaintiffs re allege and incorporate the allegations contained in paragraphs 1 through 59, inclusive, as though set forth at length herein.

50. On or about May 17, 2010, MERS purportedly assigned the Deed of Trust to Defendant Deutsche Bank and recorded such assignment in the Orange County Recorder's Office as Document Number 2010000231819.

51. In May 2009, "The Helping Families Save Their Homes Act of 2009" was enacted into law that calls for notice to the consumer when a "mortgage loan" is transferred or assigned. The provision was effective immediately and violations are subject to TILA liability.

52. 15 U.S.C. §1641 was amended by adding at the end the following:

"(g) NOTICE OF NEW CREDITOR –
    (1) IN GENERAL – In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold

*or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—*

    *(A) The identity, address, telephone number of the new creditor;*
    *(B) The date of the transfer;*
    *(C) How to reach an agent or party having authority to act on behalf of the new creditor;*
    *(D) The location of the place where transfer of ownership of the debt is recorded; and*
    *(E) Any other relevant information regarding the new creditor.".*

53.    To date, Plaintiffs have not received notice as required by 15 U.S.C. §164 (g).

WHEREFORE, Plaintiff prays for judgment against Defendant Deutsche Bank as follows:

1.    Statutory damages according to proof.

2.    For attorney fees and costs of suit incurred herein; and

3.    For such other and further relief as the court deems just and proper.

### FOURTH CLAIM FOR RELIEF
**[As to All Defendants]**
**[Fraud in Conveyance]**

54.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 53, inclusive, as though set forth at length herein.

55.    Correspondent was a stranger to the transaction, having no relationship with Indymac Bank, FSB purportedly assigned the Deed of Trust to Mortgage Electronic Registration Systems, who assigned the Deed of trust to Wells Fargo bank Exhibit 5 which assignment of Deed of Trust was recorded in or about May 25, 2005, in the Orange County Recorder's Office as Document Number 2005000402341.

56.    These Defendants were a stranger to the transaction, having no interest in the Note or Deed of Trust, nor having any authority from either the original Lender or Plaintiffs to assign the Deed of Trust, together with the Note to anyone.

57.   MERS, a Nominee for INDYMAC purportedly received assignment of the Deed of Trust, together with note.

58.   MERS was and is a foreign corporation, having no authority to conduct business in the State of California fraudulently acted as nominee for Indymac as beneficiary under the Deed of Trust without Plaintiff's consent.

59.   Upon information and belief, Plaintiffs therefore allege that neither MERS, nor One West Bank paid any consideration for the promissory note. Assuming *arguendo* that if Deutsche Bank National Trust purchased the promissory note and paid to Mortgage Electronic Registration Systems Inc. such assignment would constitute fraudulent conveyance.

60.   Upon information and belief, Plaintiffs allege that MERS and One West Bank FSB had full knowledge of such fraudulent conveyance because they accepted the assignment and alleged endorsement of promissory note from MERS who was strangers to the transaction.

61.   Even if MERS and One West Bank FSB did not have such knowledge, their actions were reckless because simple verification of document on its face would reveal that MERS had no connection and was not a party to subject transaction.

62.   All Defendants mentioned herein participated in the fraud by processing falsified assignment of Deed of Trust.

63.   One West Bank falsely represented to Plaintiffs that they received valid assignment of Deed of Trust and enforceable endorsement of promissory note to procure payments from Plaintiffs that they were not entitled to receive.

64.   The representations made by said Defendants were in fact false. The true facts were

that MERS could not act as nominees for Indymac in receiving the assignment of Deed of Trust. In fact, MERS had no interest in the promissory note and could not assign or enforce the promissory note executed in favor of Indymac Bank FSB On or about March 9, 2010 WILLIAMS falsely represented that he is the Assistant Vice President of MERS, fraudulently executed an Assignment of Deed of Trust purportedly assigned together with the note and all rights accrued under Deed of Trust to Defendant Deutsche Bank.

65. When Defendant WILLIAMS made their representations, she knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs to induce them to act in reliance on these representations in the manner herein alleged with the expectation that Plaintiffs would so act.

66. Plaintiffs, at the time these representations were made by Defendants and at the time Plaintiffs took the actions alleged herein, was ignorant of the falsity of the Defendants' representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to make payments to these Defendants when they were not entitled to such money.

67. The aforementioned conducts of the Defendants were intentional misrepresentation, deceit, or concealment of material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving the Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

**FIFTH CLAIM FOR RELIEF**
[As to All Defendants and All Persons Claiming by, Through, or Under Such Person, All

Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title Thereto and DOES 1-150)
[LIBEL]

68.   Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 67, inclusive, as though set forth at length herein.

69.   The conduct of Defendants constitute libel that tends to defame, disparage, and injure Plaintiffs in their business and reputation and has also caused pain and suffering.

70.   Such libel has occurred on a continuing basis from approximately March 11, 2010 upon publication of the NOTICE OF DEFAULT through the present.

71.   As a result of Defendants' acts and omissions, Plaintiffs have been injured in an amount yet to be ascertained.

72.   The conduct of these Defendants as alleged herein was willful, fraudulent, malicious, and oppressive.  As a result, Plaintiffs request an award of punitive damages.

### SIXTH CLAIM FOR RELIEF

[As to One West Bank and All Persons Claiming by, Through, or Under Such Person, All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title Thereto and DOES 1-150]
[QUIET TITLE]

73.   Plaintiffs re-allege and incorporate the allegatiosn contained in paragraphs 1 through 72, inclusive, as though set forth at length herein.

74.   Plaintiffs are the owner of the 20361 Newland Street Huntington Beach, CA real property now held by the Plaintiffs' estate.

75.   The basis of Plaintiffs' title is a deed granting the above-described property in fee

-16-

simple to Plaintiffs.

76. Plaintiffs are informed and believe and on such information and belief allege that all named Defendants and DOES 1-150 and all persons claiming, by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the Complaint adverse to Plaintiffs' title thereto, claim an interest adverse to Plaintiff in the above-described property as adverse interest the holder of a deed of trust against the subject property. The deed of trust was recorded on May 2 2005 in the Official Records of the County of Orange, as document number 2005000335676 Some of the Defendants including Deutsche Bank, MERS and unknown defendants, specifically those additionally designated as DOES 1-150, inclusive claim interests in the property adverse to Plaintiffs as assignees and successors of Defendants.

77. Plaintiffs are seeking to quiet title as of a date to be determined.

WHEREFORE, Plaintiffs pray for judgment on their Third through Sixth claims as follows:

1. General Damages in the sum of $1,000,000.00;

2. Special damages in the sum of $750,000.00;

3. For punitive damages in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct;

4. For attorney and costs; and

5. For attorney fees and costs of suit incurred herein; and

6. For such other and further relief as the court deems just and proper.

DATED: 12/1/10

Respectfully Submitted;

Kenneth A. Roberts
Attorney for Plaintiff

I verify that the foregoing Complaint has been reviewed by me; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Laguna Hills, California on 12-1 , 2010.

DATED: 12-1-2010

Mark H. Shafer
Plaintiff

-18-

EXHIBIT 1

This Document was electronically recorded by
Fidelity National Default 5

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

AZTEC FORECLOSURE CORPORATION
3300 N. Central Ave, Suite, 2200
Phoenix, AZ 85012

|||||||||||||||||||||||||||| 15.00
2010000118429 04:04pm 03/11/10
06 406 N16 3
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

_____
Space above this line for recorder's use only

Trustee Sale No. 10-513733INC   Title Order No. 100163240-CA-DCI

IMPORTANT NOTICE
NOTICE OF DEFAULT AND ELECTION TO SELL
UNDER DEED OF TRUST

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION, and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property.  No sale date may be set until three months from the
date this notice of default may be recorded (which date of recordation appears on this notice).

This estimated amount is $17,821.42 as of March 11, 2010 and will increase until your account
becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and
taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on
the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as
required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that
you do so in order to reinstate your account in good standing.  In addition, the beneficiary or
mortgagee may require as a condition to reinstatement that you provide reliable written evidence
that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the
entire amount you must pay.  You may not have to pay the entire unpaid portion of your account,
even though full payment was demanded, but you must pay all amounts in default at the time
payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing
prior to the time the notice of sale is posted (which may not be earlier than the end of the three-
month period stated above) to, among other things, (1) provide additional time in which to cure
the default by transfer of the property or otherwise; or (2) establish a schedule of payments in
order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor
permits a longer period, you have only the legal right to stop the sale of property by paying the
entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your
property is in foreclosure for any other reason, contact: Deutsche Bank National Trust Company,
as Trustee of the IndyMac INDX Mortgage Trust 2007-AR21, Mortgage Pass-Through Certificates,
Series 2007-AR21 under the Pooling and Servicing Agreement dated October 1, 2007, C/O Aztec
Foreclosure Corporation, 3300 N. Central Ave., Suite 2200, Phoenix, AZ 85012, (602) 222-5711 or
(800) 731-0850.

T.S. #: 10-513733INC     ORDER #: 100163240-CA-DCI

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT Aztec Foreclosure Corporation is the duly appointed Trustee under a Deed of Trust dated 04/22/05, executed by Mark Howard Shafer, a Single Man, as trustor to secure obligations in favor of Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank, as Beneficiary recorded on May 2, 2005 in Instrument No. 2005000335677 in the Office of the Recorder of ORANGE County, California, as more fully described on said Deed of Trust. Including the note(s) for the sum of $540,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE 12/01/09 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES AND ANY DELINQUENT TAXES AND/OR INSURANCE PREMIUMS ADVANCED BY THE BENEFICIARY.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached declaration pursuant to CALIFORNIA CIVIL CODE §2923.5

DATE: 03/11/10

AZTEC FORECLOSURE CORPORATION
As Trustee, By LSI Title Company, As Agent

Marco Marquez

MARK SHAFER

DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☐ The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

  ☐ the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

  ☐ the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

  ☐ the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

INDYMAC MORTGAGE SERVICING

Date: 12/4/2009     By: _Katherine Bragdad_
                        Katherine Bragdad

Loan Number:      1005597115
File Number:       10-513733INC

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS PRACTICES ACT, 15 USC 1692, ET SEQ.

The following information is provided as required by the Federal Fair Debt Collections Practices Act:

1.     As of March 9, 2010 our client has advised that the amount of the debt is $556,757.64.

2.     The creditor to whom the debt is owed is: OneWest Bank, FSB.

3.     The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter. If you do not dispute the debt within this period, it will be assumed to be valid by this office. The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, our client OneWest Bank, FSB. If you choose to dispute the debt, or any portion thereof, you must notify us within thirty (30) days of the date you receive this letter.

4.     If you notify us in writing within (30) days of the date you receive this letter that you are disputing the debt or any portion thereof, or if you notify us in writing within thirty (30) days of the date you receive this letter that you want to know the name of the original creditor if that creditor is different from our client, OneWest Bank, FSB, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

5.     The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this letter before initiating foreclosure proceedings to foreclose your deed of trust. In the event we do initiate foreclosure proceedings to foreclose your deed of trust, within thirty (30) days from the date you receive this letter, you will still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client OneWest Bank, FSB.

6.     If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose the deed of trust on your property, even if we have already initiated the foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name of the original creditor.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, call 1(800)731-0850, or write to the Fair Debt Clerk at the address provided below.

Any written request should be addressed to:

     Attention: Fair Debt Dept
     Aztec Foreclosure Corporation
     3300 N. Central #2200
     Phoenix, AZ 85012

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Please be advised that if your personal liability for this debt has been modified or extinguished by a discharge in bankruptcy, this Notice is provided solely to foreclose the deed of trust remaining on your property and is not an attempt to collect the discharged personal obligation.

EXHIBIT 2

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Christopher J. Hoo 256166<br>Randall S. Miller & Associates, P.C.<br>15166 Ventura Blvd., Suite 330<br>Sherman Oaks, CA 91403<br>(818)574-3139<br><br>☐ Individual appearing without counsel<br>☒ Attorney for: OneWest Bank, FSB | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>Mark H. Shafer<br><br><br><br>Debtor(s). | CHAPTER: 7 |
|---|---|
| | CASE NO.: 10-22011 |
| | DATE:  10/19/10<br>TIME:  10:30 am<br>CTRM:  5D<br>FLOOR: 5 |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT:  OneWest Bank, FSB                    )
### (Real Property)

1.  NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2.  Hearing Location:  ☐ 255 East Temple Street, Los Angeles    ☒ 411 West Fourth Street, Santa Ana

     ☐ 21041 Burbank Boulevard, Woodland Hills    ☐ 1415 State Street, Santa Barbara

     ☐ 3420 Twelfth Street, Riverside

3.  a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1.  If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

     b.  ☐  This Motion is being heard on SHORTENED NOTICE.  If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

          ☐ at the hearing    ☐ at least_____ court days before the hearing.

     (1)  ☐  A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

     (2)  ☐  A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

     (3)  ☐  A Motion for Order Shortening Time has been filed and remains pending.  Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4.  You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response (Optional Court Form F 4001-1M.RES), or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

F 4001-1M.RP

Motion for Relief from Stay (Real Property) - *Page 2 of 11*                    **F 4001-1M.RP**

| In re<br><br>Mark H. Shafer | (SHORT TITLE)<br><br>Debtor(s). | CHAPTER: 7<br><br>CASE NO.: 10-22011 |
|---|---|---|

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your
right to oppose the Motion and may grant the requested relief.

Dated: 9/21/10

                                           Law Offices of  Randall S. Miller & Associates, PC
                                           *Print Law Firm Name (if applicable)*

Christopher Hoo (P-256166)   /s/Christopher J. Hoo
*Print Name of Individual Movant or Attorney for Movant*          *Signature of Individual Movant or Attorney for Movant*

*December 2009*                                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 3 of 11*                          **F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| Mark H. Shafer | | |
| | Debtor(s). | CASE NO.: 10-22011 |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## (MOVANT:   OneWest Bank, FSB                          )

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

   *Street Address:* 20361 Newland Street
   *Apartment/Suite No.:*
   *City, State, Zip Code:* Huntington Beach, CA 92646

   Legal description or document recording number (including county of recording):
   Orange County, Instrument Number 2005000335677
   ☐ See attached continuation page.

2. **Case History:**
   a. ☒ A voluntary ☐ An involuntary   petition under Chapter   ☒ 7  ☐ 11  ☐ 12  ☐ 13
      was filed on *(specify date):* 8/27/10
   b. ☐ An Order of Conversion to Chapter   ☐ 7  ☐ 11  ☐ 12  ☐ 13
      was entered on *(specify date):*
   c. ☐ Plan was confirmed on *(specify date):*
   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached Declaration.

3. **Grounds for Relief from Stay:**
   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:
      (1) ☒ Movant's interest in the Property is not adequately protected.
          (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.
          (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
          (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).
          (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.
      (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.
          (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.
          (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.
          (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.
          (d) ☐ Other (See attached continuation page).

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                   **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 4 of 11*                                    F 4001-1M,RP

| In re<br>Mark H. Shafer | (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|---|
| | | Debtor(s). | CASE NO.: 10-22011 |

　　　(3) ☐ *(Chapter 12 or 13 cases only)*

　　　　　(a) ☐ Postconfirmation plan payments have not been made to the Standing Trustee.

　　　　　(b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

　　　(4) ☐ For other cause for relief from stay, see attached continuation page.

　b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor's has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

　c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

　d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

　　　(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

　　　(2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. Evidence in Support of Motion: *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

　a. ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

　b. ☐ Other Declaration(s) are also attached in support of this Motion.

　c. ☒ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _4_.

　d. ☐ Other evidence *(specify)*:

6. ☐ An optional Memorandum of Points and Authorities is attached to this Motion.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. ☒ Additional provisions requested:

　a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

　b. ☒ That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

　c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach optional Court Form F 4001-1M.ER)*.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 5 of 11*                    **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

     d.  ☐  For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 9/21/10

                                      Respectfully submitted,

                                      OneWest Bank, FSB
                                      *Movant Name*

                                      Law Offices Randall S. Miller & Associates, P.C.
                                      *Firm Name of Attorney for Movant (if applicable)*

                                      By: _____
                                      *Signature*

                                      Name:  Christopher Hoo (P-256166)   /s/Christopher J. Hoo
                                      *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                        **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 6 of 11*          **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE)<br><br>Debtor(s). | CHAPTER: 7<br><br>CASE NO.: 10-22011 |
|---|---|---|

## REAL PROPERTY DECLARATION
### (MOVANT:  OneWest Bank, FSB                          )

I, _____ Chamagne Williams _____, declare as follows:
*(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

   ☐ I am the Movant and owner of the Property.

   ☐ I manage the Property as the authorized agent for the Movant.

   ☒ I am employed by Movant as *(state title and capacity)*:     Assistant Vice President

   ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. a.  The address of the Property that is the subject of this Motion is:

   *Street Address:* 20361 Newland Street
   *Apartment/Suite No.:*
   *City, State, Zip Code:* Huntington Beach, CA 92646

   b.  The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit __1__.

   ☐ See attached page.

4. Type of property *(check all applicable boxes)*:

   a. ☒  Debtor's(s') principal residence    b. ☒  Other single family residence

   c. ☐  Multi-unit residential              d. ☐  Commercial

   e. ☐  Industrial                          f. ☐  Vacant land

   g. ☐  Other *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                              **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 7 of 11                **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

5. Nature of Debtor's(s') Interest in the Property:

   a.  ☒ Sole owner

   b.  ☐ Co-owner(s) *(specify)*:

   c.  ☐ Lien holder *(specify)*:

   d.  ☐ Other *(specify)*:

   e.  ☒ Debtor(s)  ☒ did  ☐ did not  list the Property in the Schedules filed in this case.

   f.  ☒ Debtor(s) acquired the interest in the Property by  ☐ grant deed  ☐ quitclaim deed  ☒ trust deed

      The deed was recorded on:  5/2/05

6. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $_____ | $_____ | $ 439,394.62 |
| b. | Accrued Interest: | $_____ | $_____ | $ 22,276.18 |
| c. | Late Charges | $_____ | $_____ | $ 939.59 |
| d. | Costs (Attorney's Fees, Other Costs): | $_____ | $_____ | $ 700.00 |
| f. | Advances (Property Taxes, Insurance): | $_____ | $_____ | $ 8,223.02 |
| g. | TOTAL CLAIM as of 9/13/10 | $_____ | $_____ | $ 471,533.31 |

   h.  ☐ Loan is all due and payable because it matured on *(specify date)*:

7. Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other *(specify)*
that encumbers the Property.

   a.  A true and correct copy of the document as recorded is attached as Exhibit _1_____.

   b.  A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _2____.

   c.  ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _3_____.

8. Status of Movant's claim relating to the Property *(fill in all applicable information requested below)*:

   a.  Current interest rate: 6,1250%

   b.  Contractual maturity date: 5/1/35

   c.  Amount of current monthly payment: $ 4,070.78

   d.  Number of PREPETITION payments that have come due and were not made: _9_. Total amount: $ 36,637.02

   e.  Number of POSTPETITION payments that have come due and were not made: _1_. Total amount: $ 4,076.78

   f.  Date of POSTPETITION default: 12/1/09

   g.  Last payment received on the following date: 11/1/09

   h.  Notice of default recorded on the following date: 3/11/10

   i.  Notice of sale recorded on the following date:

   j.  Foreclosure sale originally scheduled for the following date:

   k.  Foreclosure sale currently scheduled for the following date:

   l.  Foreclosure sale already held on the following date:

   m.  Trustee's deed on sale already recorded on the following date:

   n.  Future payments due by time of anticipated hearing date *(if applicable)*:
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

9. Attached hereto as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 8 of 11*       **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

10. ☒ *(Chapter 7 and 11 cases only)*: The fair market value of the entire Property is $ 450,000.00 _____, established by:

    a. ☐ Appraiser's declaration with appraisal attached herewith as Exhibit _____.

    b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.

    c. ☒ A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit  4  _____.

    d. ☐ Other *(specify)*: ⌐

11. ☐ The fair market value of the Property is declining based on/due to: _____

12. ☒ Calculation of equity in Property:

    a. Based upon    ☐ preliminary title report    ☒ Debtor's(s') admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled<br>by Debtor(s) (if any) | Amount Known to<br>Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | IndyMac | $539,394.00 | $471,533.31 |
| 2nd Deed of Trust: | IndyMac | $71,056.00 | $71,056.00 |
| 3rd Deed of Trust: | | | |
| Judgment Liens: | | | |
| Taxes: | | | |
| Other: | | | |
| TOTAL DEBT: | $ 610,450.00 | | |

    b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit  1,4  _____, and consists of:

        ☐ Preliminary title report

        ☒ Relevant portions of Debtor's(s') Schedules as filed in this case

        ☐ Other *(specify)*:

    c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $ -160,450.00 _____ (§ 362(d)(2)(A)).

    d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ -92,589.31 _____ (§ 362(d)(1)).

    e. Estimated costs of sale: $ _____ (Estimate based upon _____ % of estimated gross sales price)

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

    a. 341(a) Meeting currently scheduled for (or concluded on) the following date: _____
        Confirmation hearing currently scheduled for (or concluded on) the following date: _____
        Plan confirmed on the following date *(if applicable)*: _____

    b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

        *(Number of)* _____ payment(s) due at $ _____ each = $ _____
        *(Number of)* _____ payment(s) due at $ _____ each = $ _____
        *(Number of)* _____ late charge(s) at $ _____ each = $ _____
        *(Number of)* _____ late charge(s) at $ _____ each = $ _____

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 9 of 11*          **F 4001-1M.RP**

| In re Mark H. Shefer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

c.   Postpetition/preconfirmation advances or other charges due but unpaid:          $ _____
(See attachment for details of type and amount.)

TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:   $ _____

d.   Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation (*if applicable*):

(*Number of*) _____ payment(s) due at $ _____ each = $ _____
(*Number of*) _____ payment(s) due at $ _____ each = $ _____
(*Number of*) _____ late charge(s) at $ _____ each = $ _____
(*Number of*) _____ late charge(s) at $ _____ each = $ _____

e.   Postconfirmation advances or other charges due but unpaid:          $ _____
(See attachment for details of type and amount.)

TOTAL POSTCONFIRMATION DELINQUENCY:   $ _____

f.   ☐  The claim is provided for in the Chapter 12 or 13 Plan. Plan payment history is attached as Exhibit _____.

g.   ☐  See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan (*attach Court Form F 4001-1M.13*).

14. ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15. ☐  The court determined that the Property qualifies as single asset real estate on _____. More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time  or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16. ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17 ☐  The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

a.   ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b.   ☐  Multiple bankruptcy filings affecting the Property. The multiple bankruptcy filings include the following cases:
1.   Case Name:
Case Number:                    Chapter:
Date Filed:                         Date Dismissed:                    Date Discharged:
Relief from stay re this property   ☐ was   ☐ was not  granted.
2.   Case Name:
Case Number:                    Chapter:
Date Filed:                         Date Dismissed:                    Date Discharged:
Relief from stay re this property   ☐ was   ☐ was not  granted.
3.   ☐  See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

December 2009                                                                            **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 10 of 11          **F 4001-1M.RP**

| In re<br>Mark H. Shafer | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| | Debtor(s). | CASE NO.: 10-22011 |

18. ☐  Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

    a.  ☐  These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

    b.  ☐  Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

    c.  ☐  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on _Sept. 16_, _2010_, at _Austin_ _Texas_ _(city, state)_.

Chamagne Williams      Assistant Vice President

_Print Declarant's Name_                _Signature of Declarant_

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||   60.00

2005000335677 03:54pm 05/02/05
113 32 D11 19

0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

**Recording Requested By:**
IndyMac Bank, F.S.B. c/o Document Management

*[Company Name]*

**And When Recorded Mail To:**
IndyMac Bank, F.S.B. c/o Document Management

*[Company Name]*

*[Name of Natural Person]*
3465 E. Foothill Blvd.

*[Street Address]*
Pasadena, CA 91107

*[City, State Zip Code]*

_____ *[Space Above This Line For Recording Data]* _____

# DEED OF TRUST

MIN: 100055401210386340

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated                April 22, 2005           , together with all Riders to this document.

(B)    "Borrower" is  Mark Howard Shafer, a single man

. Borrower is the trustor under this Security Instrument.

(C)    "Lender" is  IndyMac Bank, F.S.B., a federally chartered savings bank

Lender is a         Federal Savings Bank              organized and existing under the laws of
United States of America                         . Lender's address is      155 North Lake
Avenue, Pasadena, CA 91101

(D)    "Trustee" is  First American Title Insurance Co

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 1 of 13                              14301CA 08/00
www.compliancesource.com                                                                          © 2000, The Compliance Source, Inc.

|||||||||||||||||||||||||||||||||||

(F)    "Note" means the promissory note signed by Borrower and dated    April 22, 2005    . The Note
states that Borrower owes Lender    five hundred forty thousand and NO/100ths
                                                       Dollars (U.S. $  540,000.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
    May 1, 2035    .

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the
Note, and all sums due under this Security Instrument, plus interest.

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider        ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Revocable Trust Rider
☐ Other(s) [specify]

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape
so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited
to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and
automated clearinghouse transfers.

(M)    "Escrow Items" means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third
party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,
the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor
legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all
requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not
qualify as a "federally related mortgage loan" under RESPA.

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

Loan No: 121038634
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                         Page 2 of 13                                                 14001A 08/00
www.compliancesource.com                                                                                            © 2000, The Compliance Source, Inc.

Public Record

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the      County            of.        Orange            :

<div align="center">[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]</div>

   See Exhibit: "A" attached hereto and made a part hereof.


   APN# 151-304-36



Assessor's Identification Number:      151.-304-36

which currently has the address of                20361 Newland Street
<div align="center">[Street]</div>
   Huntington Beach          , California      92646            ("Property Address"):
<div align="center">[City]                     [Zip Code]</div>

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
   1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any
   Loan No: 121036634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                      Page 3 of 13                                    1430CA  08/00
www.compliancesource.com                                                                                    © 2000, The Compliance Source, Inc.

Case 8:10-bk-22011-RK Doc 9-1 Filed 09/21/10 Entered 09/21/10 12:25:13 Desc
Exhibit 1 DOT Page 4 of 19

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender, and if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No: 121038634

California Deed of Trust-Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 4 of 13

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

Public Record

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Loan No:  121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                     Page 5 of 13                               14301CA  08/00
www.compliancesource.com                                                                          © 2000, The Compliance Source, Inc.

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No:  121038634

California Deed of Trust-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 6 of 13
MERS Modified Form 3005 01/01
1401CA 08/00
© 2000, The Compliance Source, Inc.

obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Public Record

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No: 121038634

California Deed of Trust-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 8 of 13

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

Case 8:10-bk-22011-RK    Doc 9-1    Filed 09/21/10    Entered 09/21/10 12:25:13    Desc
Exhibit 1 DOT    Page 9 of 19

14.  **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  **Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  **Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                         MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                                 Page 9 of 13                                                 14301CA  01/04
www.compliancesource.com                                                                                                  ©2000, The Compliance Source, Inc.

Public Record

Case 8:10-bk-22011-RK   Doc 9-1   Filed 09/21/10   Entered 09/21/10 12:25:13   Desc
Exhibit 1 DOT   Page 10 of 19

Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

Loan No: 121038634

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT — THE COMPLIANCE SOURCE, INC.— www.compliancesource.com

Page 11 of 13

MERS Modified Form 3005 01/01 14301CA 08/00 © 2000, The Compliance Source, Inc.

Case 8:10-bk-22011-RK    Doc 9-1    Filed 09/21/10   Entered 09/21/10 12:25:13    Desc
Exhibit 1 DOT    Page 12 of 19

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Mark Howard Shafer                                     -Borrower
                                                       [Printed Name]

_____ (Seal)
                                                       -Borrower
                                                       [Printed Name]

_____ (Seal)
                                                       -Borrower
                                                       [Printed Name]

_____ (Seal)
                                                       -Borrower
                                                       [Printed Name]

_____ [Acknowledgment on Following Page] _____

Loan No: 121038634

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 12 of 13                                    14301CA 08/00
www.compliancesource.com                                                                          © 2000, The Compliance Source, Inc.

State of                                                            §
                                                                   §
County of _____                                 §

On _____, before me, _____        : [name and title of officer]
personally appeared    Mark Howard Shafer

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:
    The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of
the Recorder of _____ County, State of California, in book _____, page _____ of official records.
Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full.  You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby; and to reconvey, without warranty,
all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____        Date: _____
            (Trustee)

Loan No: 121038634
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                                              1438UCA  08/00
www.compliancesource.com                          Page 13 of 13                            © 2000, The Compliance Source, Inc.

Public Record

Lenders Choice Title Company
3850 Royal Ave.
Simi Valley, CA 93063
Phone: (800) 803-2618



### ACKNOWLEDGEMENT

STATE OF CALIFORNIA

COUNTY OF _Orange_

On _April 23, 2005_ , before me, _Teresa E. Vaughn_ , Notary Public, personally appeared

_Mark Howard Shafer_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s), whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Teresa E. Vaughn_
Notary Public

> TERESA E. VAUGHN
> COMM # 1490046
> NOTARY PUBLIC - CALIFORNIA
> ORANGE COUNTY
> My Commission Expires May 22, 2008

ca-ack.doc  rev 4/6/2005  Page 1 of

Public Record

# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index - Rate Caps)

Loan #: 121038634                                    MIN: 100055401210386340

THIS FIXED/ADJUSTABLE RATE RIDER is made this   22nd  day of   April   2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to   IndyMac Bank, F.S.B., a
federally chartered savings bank

("Lender") of the same date and covering the property described in the Security Instrument and located at:
20361 Newland Street, Huntington Beach, CA 92646

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of   6.125   %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
May   2010  , and the adjustable interest rate I will pay may change on that
day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable
interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX- Single Family          5008
                                                                        Initials: MtH    8/03
                        Page 1 of 4
8480848 (0308)          VMP Mortgage Solutions (800)521-7291

Public Record

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths                                                              percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.125 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment due after the first Change Date.

Loan No: 121038634                                    Initials: _MHS_                      6006
848054U (0308)                     Page 2 of 4                                             8/03

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.  When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Loan No: 121038534

8480648 (0309)                    Page 3 of 4                    Initials: M.r.S.          8008
                                                                                             8/03

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.



_____(Seal)          _____(Seal)
Mark Howard Shafer          -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                              -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                              -Borrower

8480548 (0309)                    Page 4 of 4                    600B
                                                                 8/03

Loan No: 121038634

SCHEDULE "A"

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF ORANGE:

LOT 98 OF TRACT NO. 3595, IN THE CITY OF HUNTINGTON BEACH, COUNTY
OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 137,
PAGES 19 AND 20, MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 151-304-36; SOURCE OF TITLE IS DOC. NO. 2004000572224
(RECORDED 06-23-2004)

03/07/2005 11:00:38 [Elizabeth Congos]

# FIXED/ADJUSTABLE RATE NOTE
# INTEREST ONLY FIXED PERIOD

(One-Year Treasury Index (As Published In *The Wall Street Journal*)-Rate Caps)

Loan # 121030634



THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| April 22, 2005 | Simi Valley | California |
|---|---|---|
| [Date] | [City] | [State] |

20361 Newland Street, Huntington Beach, CA 92646
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 540,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is IndyMac Bank, F.S.B., a federally chartered savings bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.125 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on June, 2005. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal, interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal If, on May 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at IndyMac Bank, F.S.B., P.O. Box 78826, Phoenix, AZ 85062-8826 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ 2,756.25 before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family     MIN: 1.00055401210386340
Page 1 of 5                                                                                            Form 8000
8480510 (0308)                                                                                        7/2003
VMP Mortgage Solutions (800)521-7291

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHARGES**

   **(A) Change Dates**

   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  May,   2010
and the adjustable interest rate I will pay may change on that day every 12th month
thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my
adjustable interest rate could change, is called a "Change Date."

   **(B) The Index**

   Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly
average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the
Federal Reserve Board. The most recent Index figure available as of 45 days before each Change Date is called the "Current
Index."

   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.

   **(C) Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding two  and 750/1000ths
percentage points (          2.750       %) to the Current Index. The Note Holder will
then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated
in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially
equal payments. The result of this calculation will be the new amount of my monthly payment.

   **(D) Limits on Interest Rate Changes**

   The interest rate I am required to pay at the first Change Date will not be greater than       11.125    % or less
than    2.750       %. Thereafter, my adjustable interest rate will never be increased or decreased on any
single Change Date by more than   2       percentage points from the rate of interest I have been paying for the preceding
12       months. My interest rate will never be greater than          12.125   %.

   **(E) Effective Date of Changes**

   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Changes**

   Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or
mail to me a notice of such change. The notice will include information required by law to be given to me and also the title
and telephone number of a person who will answer any question I may have regarding the notice.

   **(G) Date of First Principal and Interest Payment**

   The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest
Payment Due Date") shall be the first monthly payment date after the first Change Date.

**5.   BORROWER'S RIGHT TO PREPAY**

   I have the right to make payments of principal at any time before they are due. A payment of principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not
designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly
payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period
when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of
the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments
consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first
Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an
interest rate increase.

**6.   LOAN CHARGES**

   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such

Loan No: 121038634

8480810 (0306)                                      Page 2 of 6                    Form 8000
                                                                                   7/2003



loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charges for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of          15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000          % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D) No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

    (A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Loan No: 121038634

8480510 (0308)                                          Page 3 of 5

Form 8000
7/2003

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Mark Howard Shafer            -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                              -Borrower

Pay to the order of

_____
Without Recourse                    [Sign Original Only]

Peggy LaDuke
Assistant Secretary
IndyMac Bank, F.S.B.

Loan No: 121038634
8480610 (0308)                          Page 5 of 5                   Form 8000
                                                                     7/2003

Case 8:10-bk-22011-RK    Doc 9-3    Filed 0[...]    Exhibit 3 - Assignment    Page 1 o[...]

This Document was electronically recorded by DSI Title Company

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 12.00
2010000231819 03:52pm 05/17/10

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

37 402 A32 2
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

OneWest Bank, FSB
888 E. Walnut Street
Pasadena, California 91101

Space above this line for recorder's use only

Trustee Sale No. 10-513733INC
1003697446
Title Order No. 100763246-CA-DCI
APN: 151-302-36

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank, as Assignor, by these presents does hereby grant, sell, convey, and transfer to Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR21, Mortgage Pass-Through Certificates, Series 2007-AR21 under the Pooling and Servicing Agreement dated October 1, 2007 all beneficial interest under that certain Deed of Trust dated 04/22/05, executed by Mark Howard Slafter, a Single Man, as Trustor(s) to First American Title Insurance Co, as Trustee Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank and Recorded on 05/02/05 as Instrument No. 2005000335677 of official records in the Office of the County Recorder of ORANGE County, CA together with the note(s), other obligations, and money due and to become due thereon, with interest, that are secured by the Deed of Trust described herein.

In witness whereof, the undersigned corporation has executed this Assignment of Deed of Trust by: _____Charmane Williams_____ Its ___Assistant Vice President___, who is duly authorized by a resolution of its board of directors to execute this assignment.

This assignment has an effective date of 03/09/2010

Continued on next page

T.S.# 10:513713 INC.
100359/115
TITLE ORDER #: 100169240-CA-DCI

DATED: 3/4/10

Mortgage Electronic Registration Systems, Inc., solely as Nominee for IndyMac, F.S.B., a United States of America Federal Savings Bank

By _____ Chasmene Williams

It s _____ Assistant Vice President

State of _____ Texas

County of _____ Travis

On 3/4/10 _____ before me, _____ Anna Ramsey _____, a Notary Public in and for said State. Personally appeared _____ Chasmene Williams _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _____ Texas _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Notary

Anna Elizabeth Ramsey
Notary Public
State of Texas
Comm. Exp. 12-18-13

In Re                     MARK H. SHAERR                          Case No.
                          Debtor                                  (If known)

# SCHEDULE A – REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the debtor holds no interest in real property, write "None" under "Description and Location of Property".

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G – Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim".

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C – Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 20301 NEWLAND STREET HUNTINGTON BEACH, CA, 92646 | fee simple | H | 450,000.00 | 612,000.00 |
| | | Total | 450,000.00 | |

Case 8:01-bk-22001-RK   Doc 94   Filed 00/27/10   Entered 00/27/10 12:25:43   Desc
Exhibit Doc Schedule Page Page 2 of 32

Official Form 6D (12/07)

In re: _____ MARK H SHAFER _____     Case No. _____
           Debtor                              (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, if Any |
|---|---|---|---|---|---|---|---|---|
| Account Number: 0681063307115 INDYMAC/ONE WEST BANK P.O. BOX 78826 PHEONIX, AZ, 85062 | | H | 2005 FIRST MORTGAGE LOAN | | | X | 539,394.00 | |
| | | | VALUE $     450,000 | | | | | |
| Account Number: 0688400025429 INDYMAC/ONE WEST BANK P.O. BOX 78826 PHEONIX, AZ, 85062 | | H | 2005 SECOND MORTGAGE LOAN | | | X | 71,056.00 | |
| | | | VALUE $ | | | | | |
| Account Number: | | | | | | | | |
| | | | VALUE $ | | | | | |
| | | | | | | Subtotal (Total of this page) | $610,450.00 | $0.00 |
| | | | | | | Total (Use only on last page) | $610,450.00 | |
| | | | | | | (Report also on Summary of Schedules.) | | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data) |

___  continuation sheets attached

Motion for Relief from Stay (Real Property) - Page 11 of 11                    F 4001-1M.RP

| In re | (SHORT TITLE) | CHAPTER: 7 |
|-------|---------------|------------|
| Marlon H. Shafer | | |
| | Debtor(s). | CASE NO.: 10-22011 |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16100 Ventura Blvd., Suite 340,
Sherman Oaks, CA 91403

A true and correct copy of the foregoing document described as Notice of Motion and Motion for Relief from the Automatic Stay                    will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d), and (b) in the manner indicated below:

Hand Delivery

I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 9/21/10            I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Jeffrey I Golden - Trustee jjones@wgllp.com; jgolden@ecf.epiqsystems.com
Central District Of California (Santa Ana) ustpregion16.sa.ecf@usdoj.gov

☒ Service information continued on attached page

II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):
On 9/21/10                I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Mark H Shafer                       Kenneth A Roberts
20361 Newland St                    28376 S Pointe Dr #208
Huntington Beach, CA 92646          Laguna Hills, CA 92653

☒ Service information continued on attached page

III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on              I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/21/10 | Christopher Hsia | /s/ | |
|---------|------------------|-----|---|
| Date | Type Name | Signature | |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                    F 4001-1M.RP

EXHIBIT 3

[REQUESTED BY]
Nationwide Title Clearing
[WHEN RECORDED MAIL TO]
MARK HOWARD SHAFER
20361 NEWLAND STREET
HUNTINGTON BEACH, CA 92646
(TRUSTOR)

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

2005000421816 04:18pm 06/01/05
12.00
213 110 S15 R01 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

Loan: 1004459929
SUBSTITUTION OF TRUSTEE and FULL RECONVEYANCE

Whereas
MARK HOWARD SHAFER  was the original Trustor under that certain Deed
of Trust recorded on 06/23/2004  in the office of the County Recorder
of ORANGE  County, California, as Instrument Number  2004000572225
in Book  , Page

Whereas, the undersigned, as the present Beneficiary(s) under said
Deed of Trust desires to substitute a new Trustee under said Deed of
Trust in place and stead of original Trustee, now therefore, the
undersigned hereby substitutes himself (themselves) as Trustee under
said Deed of Trust and does hereby reconvey without warranty to the
persons legally entitled thereto all Estate now held by it under said
Deed of Trust.

Dated: 05/20/2005
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INDYMAC
BANK, FSB

By:_____
    SUSAN STRAATMANN    ASSISTANT VICE PRESIDENT

STATE OF FLORIDA  COUNTY OF PINELLAS
On   05/20/2005  before me, MARY JO MCGOWAN (#DD0236404) , Notary
Public, personally appeared   SUSAN STRAATMANN , personally known to
me (or proved to me on the basis of satisfactory evidence) to be the
person whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her
authorized capacity, and that by his/her signature on the instrument
the person, or entity upon behalf of which the person acted, executed
the same. WITNESS MY hand and official seal.

* * * * * * * * * * * * *

MARY JO MCGOWAN (#DD0236404)
Notary Public/Commission expires 07/30/2007

MARY JO MCGOWAN
Notary Public State of Florida
My Commission Exp. July 30, 2007
No. DD 0236404
Bonded through (800) 432-4254
Florida Notary Assn. Inc.

Prepared By:
J. Leshuski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

IMBRC 3682217    NAC419724    10005540

RCNC

EXHIBIT 4

WHEN RECORDED MAIL TO:

*Lenders First Choice*

This Document was electronically recorded by
**Financial Title Company**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

26.00
2005000335676 03:54pm 05/02/05
113 32 G02 1
112.48 112.47 0.00 20.00 0.00 0.00 0.00 0.00 0.00/

THIS AREA FOR RECORDER'S USE ONLY

GRANT DEED  *No Consideration*

APN: 151-304-36

The undersigned grantor(s) declare(s):

Documentary transfer tax is $ 224.95 and is

(x) computed on the consideration or value of property conveyed;

Computed on Full Value of interest conveyed $ 204,255.00 R & T 11911

City of Huntington Beach

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Pacific Sands LLC, a California limited liability company, as successor in interest to Pacific Sands, A Partnership, does hereby GRANT AND CONVEY to Mark Howard Shafer, a single man, the real property in the County of Orange described as:

Lot 98 Tract 3595, City of Huntington Beach, County of Orange, State of California, as per map recorded in Book 137, Page(s) 19-20 of Miscellaneous Maps, in the office of the County Recorder of said county.

This Grant Deed is being recorded to terminate the Leasehold Estate created by that document recorded July 13, 1961 in Book 5783 Page 659 of official records. The Grantor and Grantee shown above are the successors in interest to the Lessor and Lessee as set forth in said lease.

PACIFIC SANDS LLC, A CALIFORNIA LIMITED LIABILITY
COMPANY

By _____

Allen M. Brock

Its: Manager

Dated: April 28, 2005

State of California          }
                            } ss
County of Los Angeles  }

On April 28, 2005 before me, Victor L. Moon, Notary Public, in and for County and State, personally appeared Allen M. Brock, personally known to me or proved by satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

MAIL TAX STATEMENTS TO:
Same as Above

Item #1104

VICTOR L. MOON
COMM. #1425930
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. July 5, 2007

GROUND LESSOR OF TRACTS - 3595, 3977, 4094, 4114, 4409 & 4640
in HUNTINGTON BEACH, CALIFORNIA

BY FAX

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 21 2010

ALAN CARLSON, Clerk of the Court
F. Fuentes
BY L. FUENTES

1  WRIGHT, FINLAY & ZAK, LLP
   Robin Prema Wright, Esq., SBN 150984
2  Nicole K. Neff, Esq., SBN 257964
3  4665 MacArthur Court, Suite 280
   Newport Beach, CA 92660 (Shafer, Mike/Declaration of Non-Monetary Status)
4  Tel. (949) 477-5050; Fax (949) 477-9200
5  rwright@wrightlegal.net

6  Attorneys for Defendant,
   AZTEC FORECLOSURE CORPORATION
7

8              SUPERIOR COURT OF CALIFORNIA

9         COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

10 Mark Shafer, an individual,          ) Case No.: 30-2010-00429212
                                        )
11              Plaintiff,              )
                                        ) **DECLARATION RE: NON-**
12      vs.                             ) **MONETARY STATUS OF**
                                        ) **DEFENDANT AZTEC FORECLOSURE**
13                                      ) **CORPORATION**
   INDYMAC BANK, FSB, ONE WEST          )
14 BANK FSB, DEUTSCHE BANK, AZTEC       ) *[Civil Code Section 2924(l)]*
15 FORECLOSURE CORPORATION,             )
   MORTGAGE ELECTRONIC                  )
16 REGISTRATION SYSTEMS, INC., and      )
17 DOES 1-150, inclusive,               )
                                        )
18              Defendants.             )
                                        )
19 ─────────────────────────────────────)

20      I, Robbie Weaver, do hereby declare and state as follows:

21      1.      I am National Operations Manager for Defendant, Aztec Foreclosure

22 Corporation, ("Aztec" or "Defendant") in the above-referenced action. I have personal

23 knowledge of the facts set forth herein, and if called upon to do so, I would and could

24 competently testify thereto.

25      2.      On December 1, 2010, Plaintiff, Mark Shafer, ("Plaintiff"), filed a Complaint

26 in the Orange Superior Court, ("Complaint"), to Determine the Nature, Extent and Validity of

27 Lien and to Disallow Secured Claim, TILA Violation, Fraud, Libel, Quiet Title and

28 Injunctive Relief. The Complaint arises out of a loan involving the borrower and the lender.

                                    -1-

                    DECLARATION OF NON-MONETARY STATUS



1  Aztec is simply the foreclosure trustee ("Trustee"), with the power to foreclose on the

2  property that arises from the Deed of Trust securing the loan.

3      3.      Based on my review of Plaintiff's Complaint, it is my reasonable belief that

4  Aztec has been named in this action solely in its capacity as Trustee, and not arising out of

5  any wrongful acts or omissions on its part in the performance of its duties as Trustee. The

6  basis for my reasonable knowledge or belief set forth above is that Aztec has not been

7  involved in any way with the property which is the subject of this lawsuit outside of its

8  capacity as Trustee, and has no interest in the property, except to be named as the Trustee

9  under the deed of trust encumbering the property by way of Substitution of Trustee. The

10 trustee's conduct, including the recording of the substitution of trustee and foreclosure

11 notices, is *privileged* pursuant to *Civil Code* §§47 and 2924(d).

12      4.      I am not aware of any evidence produced to date by Plaintiff or the remaining

13 Defendants, or of any facts, documents, or testimony tending to suggest that Aztec engaged

14 in any misconduct in connection with the performance of its duties as Trustee. Pursuant to

15 *Civil Code* §2924(b) the foreclosure trustee incurs no liability for reliance in good faith on

16 information provided in good faith by the beneficiary regarding the nature and amount of the

17 default under the secured obligation. Further, pursuant to *Civil Code* §2924(b), foreclosure

18 trustees are not subject to the California Rosenthal Act.

19      5.      The Complaint makes no allegations that Aztec failed to perform any of its

20 duties as a Trustee, and a review of Aztec's file confirms that Aztec complied with the

21 applicable foreclosure statutes. None of the remaining Defendants filed a Cross-Complaint

22 against Aztec alleging any defect in the performance of its duties as trustee, either under the

23 Deed of Trust, or the applicable statutes set forth in *Civil Code* §2924, et seq.

24 ///

25 ///

26 ///

27 ///

28 ///

-2-

DECLARATION OF NON-MONETARY STATUS

6.      Given the foregoing facts, Aztec hereby agrees to be bound by whatever non-monetary Order or Judgment that this Court issues with regard to the Deed of Trust which is the subject of this lawsuit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 20 day of December, 2010, at Phoenix, Arizona.

Robbie Weaver, Declarant

-3-

DECLARATION OF NON-MONETARY STATUS

## PROOF OF SERVICE

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On December 21, 2010, I served the within **DECLARATION OF NON-MONETARY STATUS BY DEFENDANT AZTEC FORECLOSURE CORPORATION** on all interested parties in this action as follows:

[x]     by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Ken Roberts, Esq.
LAW OFFICES OF KEN ROBERTS AND ASSOCIATES
575 Anton Blvd #300
Costa Mesa, CA 92626
714-432-6480; Fax: 714-593-3795
Attorney for Plaintiff

[ X]     (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]     (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]     (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[]     (BY FEDERAL EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Federal Express with the delivery fees provided for.

[x]     (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Executed on December 21, 2010, at Newport Beach, California.

_____
Gretchen Grant

-1-

# EXHIBIT "C"

1 | ROBIN PREMA WRIGHT (SBN 150984)
  | NICOLE K. NEFF (SBN 257964)
2 | WRIGHT, FINLAY & ZAK, LLP
  | 4665 MacArthur Court, Suite 280
3 | Newport Beach, CA 92660
  | Phone: (949) 477-5050
4 | Fax: (949) 477-9200
  | Email: rwright@wrightlegal.net
5 |        nneff@wrightlegal.net

6 | Attorneys for Defendant
  | AZTEC FORECLOSURE CORPORATION

7 |

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | SOUTHERN DIVISION

| | |
|---|---|
| 11    MARK SHAFER, an individual, | Case No. _____ |
| 12          Plaintiff, | **JOINDER IN NOTICE OF REMOVAL** |
| 13        vs. | |
| 14    INDYMAC BANK, FSB; ONEWEST BANK, FSB; DEUTSCHE BANK, AZTEC | |
| 15    FORECLOSURE CORPORATION; MORTGAGE ELECTRONIC | |
| 16    REGISTRATION SYSTEMS, INC. and DOES 1-150, | |
| 17 | |
|         Defendants. | |
| 18 | |

19 |      Defendant AZTEC FORECLOSURE CORPORATION hereby joins Defendants

20 | DEUTSCHE BANK NATIONAL TRUST COMPANY and MORTGAGE ELECTRONIC

21 | REGISTRATION SYSTEMS, INC. in the said Notice of Removal.

22 |

23 |

  | Dated: January 5, 2011

24 |

25 |                     WRIGHT, FINLAY & ZAK, LLP
  |                     ROBIN PREMA WRIGHT
  |                     NICOLE K. NEFF

26 |                     By: _____

27 |                     NICOLE K. NEFF
  |                     Attorneys for Defendant AZTEC
  |                     FORECLOSURE CORPORATION

28 |

JOINDER IN NOTICE OF REMOVAL

918027.01/OC

1

## PROOF OF SERVICE

2         I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and am not a party to this action. My business address is 1900 Main Street,
3     Fifth Floor, Irvine, California 92614-7321.

4         On January 5, 2011, I served the within document(s) described as:

5     **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b)**

6     on the interested parties in this action as stated below:

7     Kenneth A. Roberts, Esq.                Attorneys for Plaintiff Mark Shafer
      LAW OFFICES OF KENNETH A.
8     ROBERTS AND ASSOCIATES
      575 Anton Boulevard, Suite 300
9     Costa Mesa, CA 92626

10

      Robin Prema Wright, Esq.              Attorneys for Defendant Aztec Foreclosure
11    Nicole K. Neff, Esq.                    Corporation
      WRIGHT, FINLAY & ZAK, LLP
12    4665 MacArthur Court, Suite 280
      Newport Beach, CA 92660
13

14    ☒      **BY OVERNIGHT DELIVERY:** I deposited in a box or other facility regularly maintained by FedEx, or delivered to a courier or driver authorized by said express
15    service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelopes or packages designated by the express service carrier, addressed as indicated above on the above-mentioned date, with fees for overnight delivery paid
16    or provided for.

17        I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true
18    and correct.

19

20        Executed on January 5, 2011, at Irvine, California.

21    _____    _____
          Sheryl L. Portwood
22        (Type or print name)               (Signature of Declarant)

23

24

25

26

27

28

918027.01/OC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV11-21 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and am not a party to this action.  My business address is 1900 Main Street, Fifth Floor, Irvine, California 92614-7321.

On January 5, 2011, I served the within document(s) described as:

NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE FOR DISCOVERY

on the interested parties in this action as stated below:

Ken Roberts, Esq.                                      Attorneys for Plaintiff Mark Shafer
Law Offices of Ken Roberts and Associates
575 Anton Blvd., Suite 300
Costa Mesa. CA 92626

Robin Prema Wright, Esq.                          Attorneys for Defendant Aztec Foreclosure
Nicole K. Neff, Esq.                                    Corporation
Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Phone: (949) 477-5050
Fax: (949) 477-9200

☒       **BY OVERNIGHT DELIVERY:**  I deposited in a box or other facility regularly maintained by FedEx, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelopes or packages designated by the express service carrier, addressed as indicated above on the above-mentioned date, with fees for overnight delivery paid or provided for.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 5, 2011, at Irvine, California.

Sheryl L. Portwood
(Type or print name)                                    (Signature of Declarant)

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>MARK SHAFER | **DEFENDANTS**<br>INDYMAC BANK, FSB; ONEWEST BANK, FSB; DEUTSCHE BANK, AZTEC FORECLOSURE CORPORATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and DOES 1-150 |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Law Office of Ken Roberts<br>Ken Roberts (SBN 62536)<br>575 Anton Blvd., Suite 300<br>Costa Mesa, CA 92626<br>Phone: 714-432-6480; Fax: 714-593-3795 | Attorneys (If Known)<br>Allen Matkins Leck Gamble Mallory & Natsis LLP<br>David R. Zaro (SBN 124334)<br>Jeren Wei (SBN 242298)<br>1900 Main Street, Fifth Floor<br>Irvine, CA 92614<br>Phone: 949-553-1313; Fax: 949-553-8354 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** 1,750,000.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Removal from state court pursuant to U.S.C. Sections 1331 and 1441

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/ PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☒ 290 All Other Real Property | | | | |

SACV11-00021 AG(MLGx)

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If case number(s): _____

(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (OneWest Bank, FSB) Orange County (Deutsche Bank National Trust Company) | Virginia (Mortgage Electronic Registration Systems, Inc.) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date January 5, 2011
Jeren Wei (242298)

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com